479 A.2d 1011

The VALLEY FORGE HISTORICAL SOCIETY and The
Valley Forge Historical Society on behalf of The
Washington Memorial

v.

WASHINGTON MEMORIAL CHAPEL and The Rector,
Church Wardens and Vestrymen of the Washington
Memorial Chapel at Valley Forge, Pennsylvania, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 6, 1983.

Filed June 22, 1984.

Petition for Allowance of Appeal Denied Oct. 15, 1984.

496

John J. O'Brien, Jr., Philadelphia, for appellants.

J. Aker, Norristown, for appellees.

Before ROWLEY, POPOVICH and MONTGOMERY, JJ.

ROWLEY, Judge:

This is a direct appeal from a final decree,[1] entered on January 10, 1983, in a declaratory judgment proceeding, in

[1] The Chancellor certified that his decree was sufficient to determine "the substantial issues" between the parties, and thus, his decree was entered as a Final Decree, rather than a decree nisi according to Pennsylvania Rules of Civil Procedure 1517 and 1520. Appellant *specifically* waived any error in this procedure. We, however, express no opinion regarding the propriety of such a procedure.

the Orphans' Court Division of the Montgomery County Court of Common Pleas granting a permanent injunction. The Chancellor declared that the appellants, the Rector, Church Wardens and Vestrymen of the Washington Memorial Chapel at Valley Forge, Pennsylvania, ("Chapel") hold title to the real estate and buildings on the grounds of the Washington Memorial[2] *in trust* for the joint occupancy and uses thereof of both the Chapel and the appellee, the Valley Forge Historical Society ("Society"). By virtue of the final decree a preliminary injunction, which had been entered against appellants on November 8, 1979 and continued on January 10, 1980, was made permanent. The appellants have been restrained from: 1) attempting to evict the Society from its quarters in the Washington Memorial, and 2) interfering with the Society's free access to its quarters at the Memorial or the free access of the public to such quarters. After a thorough review of the record herein, we affirm the decree of the Chancellor, in part. Because of the unique circumstances in this case, however, we find that the decree must be modified, and thus, we remand for further proceedings not inconsistent with this opinion.

The pertinent facts underlying the dispute in this case are set forth in *Valley Forge Historical Society v. Washington Memorial Chapel,* 492 Pa. 491, 426 A.2d 1123 (1981), wherein the Supreme Court of Pennsylvania affirmed the grant of the preliminary injunction, and they need not be repeated here. The crucial inquiry on this appeal is whether the deeds, by which the Chapel acquired title to the property at Valley Forge, created a charitable trust, for both religious and patriotic purposes, for the benefit of both the Chapel and the Society.

2. The "Washington Memorial" is the term used to designate the parcel of land and the group of attached buildings erected thereon, located at the edge of the Valley Forge Historical National Park. The "Washington Memorial" is intended as a memorial to our Nation's first president and those men and women of the Revolutionary Army who were quartered with him at Valley Forge during the winter of 1777–1778. The Memorial is said to be near the spot where historians say General Washington knelt in the snow to ask God's help during that terrible winter.

The Chancellor heard testimony presented by the parties to this controversy for four days. He examined all of the deeds in the chain of title and a myriad of other documents, including writings of the Reverend W. Herbert Burk, the founder of both the Society and the Chapel. The Chancellor's findings of fact may be summarized as follows. In 1905, I. Heston Todd and William M. Stephens executed separate deeds to three named individuals for the real property on which the Washington Memorial is now situated. By their deeds, the grantors intended to create, and did create, a trust under which the premises would be utilized for both religious and patriotic purposes. The Society at that time functioned as an unincorporated association originally known as the Valley Forge Museum of American History, with the first historical artifacts having been assembled in 1903. The Society became a non-profit corporation when its charter was granted in 1923. The Society fulfills the *patriotic* purposes of the trust, and the deeds, letters, and other evidence in this case confirm the fact that the trust was established, in part, for the benefit of the Society. Furthermore, over the years, the Society has expended large sums of money for capital improvements in the complex of buildings known as the Washington Memorial. The Chapel became a non-profit corporation when its charter was granted in 1910 and succeeded to the interests of the three individual grantees of the property. The Chapel, however, is not the beneficiary of the trust for *patriotic* purposes.

On the basis of these facts the Chancellor resolved the Society's petition for declaratory judgment by determining that the Society was a beneficiary of the trust *in perpetuity* with the Chapel. Therefore he concluded that the Chapel holds the title to the real estate and buildings thereon in trust for the joint occupancy and uses of both the Chapel and the Society. Although the Chapel alleges eleven errors by the trial court, its basic contention on this appeal is that the Chancellor's findings of fact and conclusions are not

supported by the record and are based on a mistaken interpretation of the law.

 Our scope of review on appeal of a final decree is well settled. The factual conclusions of the Chancellor have the force of a jury verdict and will not be disturbed on appeal unless they are not supported by adequate evidence. *Cardamone v. University of Pittsburgh,* 253 Pa.Super. 65, 384 A.2d 1228 (1978); *Nationwide Mutual Insurance Co. v. Walter,* 290 Pa.Super. 129, 434 A.2d 164 (1981). His findings are afforded particular weight in cases in which the credibility of witnesses must be evaluated, as the Chancellor has had the opportunity to hear their actual testimony and to observe their demeanor on the witness stand. *See Fascione v. Fascione,* 272 Pa.Super. 530, 416 A.2d 1023 (1979). We will not reverse on appeal unless the trial court abused its discretion or committed an error of law. *Neshaminy Constructors v. Philadelphia et al.,* 303 Pa.Super. 420, 449 A.2d 1389 (1982). The same general principles apply to an appeal from the findings of a judge in Orphans' Court proceedings. *See Adoption of H.,* 476 Pa. 608, 383 A.2d 529 (1978). With these standards in mind, we review the evidence of record and the Chancellor's findings and conclusions to determine whether the Chapel alleges any valid basis for reversal.

 Initially, appellant argues that the evidence in this case did not establish the existence of an express trust for the benefit of the Society, and thus, the Orphans' Court Division was without subject matter jurisdiction to entertain this action. In *Valley Forge Historical Society v. Washington Memorial Chapel,* 493 Pa. 491, 426 A.2d 1123 (1981), however, our Supreme Court specifically held that the Orphans' Court Division had jurisdiction over this action under the Decedents, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 711, as long as it was the grantor's intent to create an inter vivos charitable trust. We find that the trial judge correctly determined that the relevant deeds and other evidence in this case demonstrated an intention on the part of the grantors to create a charitable trust for both

religious and patriotic purposes. Thus, the Supreme Court's opinion is dispositive on the issue of jurisdiction and we need not further address that issue here. *See* 493 Pa. at 497 n. 1, 426 A.2d at 1127 n. 1.

■ Appellant next contends that the trial judge did not follow the proper procedure in ruling on a petition filed by the Chapel to dissolve the preliminary injunction, resulting in a deprivation of the Chapel's property without due process of law. Although the petition procedure was technically inaccurate, we find that it resulted in harmless error.

■ While the preliminary injunction was in effect, the Society ceased operations in the portion of the Chapel building that it occupied because the building did not comply with state and local building codes. On February 19, 1981, upon certification that the building code violations were remedied, the trial court permitted the Society to reopen the premises to the public. Thereafter, the Chapel petitioned to dissolve the preliminary injunction against it and sought to prohibit the Society from continuing its operations on the premises of the Washington Memorial. The Society filed an Answer 29 days after the petition was filed. Four days later, preliminary objections in the nature of a demurrer were filed by the Society. After a hearing on February 9, 1982, the trial judge sustained the demurrer.[3]

■ We perceive no prejudice to the Chapel in the fact that the Society's Answer was filed 9 days late, nor do we find that the trial court erred in refusing to dissolve the injunction. Although appellant's petition was entitled "A Petition to Amend Court Orders" pursuant to Montgomery County Local Rule 251, it was actually a motion to dissolve the injunction. Under Equity Rule 1531(c), a party may move for dissolution of a preliminary injunction and present to the court any changes in circumstances that may have

3. Although the Chapel was entitled to take an interlocutory appeal from the trial court's determination, Pa.R.A.P. 311(a)(4), the failure to appeal immediately did not constitute a waiver of the Chapel's objections on this appeal, taken from the final determination on the merits, Pa.R.A.P. 311(d)(1)(i).

occurred since the issuance of the injunction which militate against its continuance. Goodrich-Amram 2d § 1531(c):1. The Society's demurrer, albeit improper, was surplusage, since the Society was entitled to raise any objection at the hearing on the petition, and the trial court was free to permit any reasonable procedure designed to raise the objection. *See,* Goodrich-Amram 2d § 2018:1.[4]

The Chapel was afforded an opportunity to present any facts that militated against continuance of the injunction at the February 9, 1982 hearing. The record reveals that it presented no evidence that justified dissolution or modification of the injunction. We find no prejudice to the Chapel in these proceedings. In allowing the Society to reopen its premises to the public upon certification that the building code violations were remedied, the trial judge properly sought to maintain the status quo—that is—"the last actual, peaceable and lawful noncontested status which preceded the pending controversy." *Valley Forge Historical Society v. Washington Memorial Chapel,* 493 Pa. 491, 501, 426 A.2d 1123, 1129 (1981).

▆▆▆▆ Appellant next argues that the Chancellor's determination that the Society was an intended beneficiary of the trust is contrary to: 1) the Lay Control Property Act of 1855 and the Canons of the Protestant Episcopal Church; 2) the written lease agreement entered into by the Chapel and

---

4. The Chapel argues that the filing of an answer to the petition resulted in a waiver of the right to file preliminary objections in the nature of a demurrer under Pa.R.C.P. 1032. Although a petition is not a pleading under Pa.R.C.P. 1017, pleading rules have been applied to petition and answer proceedings. *See Monroe Contract Corp. v. Harrison Square, Inc.,* 266 Pa.Super. 549, 405 A.2d 954 (1979). Generally, an answer is the proper reply to a petition. Under Rule 1032, the filing of an answer constitutes a waiver of certain defenses, but it does not constitute a waiver of the right to demur, since that defense is included in the exceptions to Rule 1032 and may be raised at any time in the action. Goodrich-Amram 2d §§ 1017(b):3, 1032:5. However, the proper procedure for demurring after the answer has been filed is by a motion for judgment on the pleadings. Pa.R.C.P. 1034. Thus, under general pleading rules, the Society's demurrer by preliminary objection may have been improper; however, because this controversy was before the court on a petition, the court had the discretion to resolve the dispute on its merits.

the Society; and 3) the language of the original deeds and the intent of Reverend Herbert Burk. We find that the opinion of the Chancellor, dated January 10, 1982, adequately disposes of appellant's contentions regarding numbers (1) and (2) above. The Act of 1855 and the Canons provide only that property lawfully conveyed for the use of the Church alone cannot be diverted to other uses. The Chancellor determined that the use of the property involved herein for patriotic purposes is not prohibited by the Act or the Canons since the property was originally dedicated for *both* religious and patriotic uses. Regarding the written lease agreement between the parties, the Chancellor held that the nominal "landlord-tenant" relationship was a result of the parties' attempts to resolve their disputes amicably in recent years. The Chancellor determined that the trial court was not bound by the parties' characterization of their legal relationship and that the Society did not relinquish its legal and equitable rights by entering into a lease agreement of limited duration. We need add nothing further to the Chancellor's resolution of these two issues. Therefore, we address herein only appellant's basic contention that the language of the original deeds, and the intent of Reverend Burk, as established by the record, are inconsistent with a determination that the trust was established for the benefit of both the Chapel and the Society.[5]

In his opinion, the trial judge succinctly outlined the trust provisions contained in the deeds, along with other documents relevant to their interpretation:

The parties agree that the first relevant deeds in the chain of title, and the pertinent language therefrom, are as follows:

1. The deed from I. Heston Todd to Rev. Herbert J. Cook, Sarah S. Zulick and Charles W. Comfort, dated

**5.** Appellant also alleged that the Statute of Frauds precluded the introduction of extrinsic evidence to alter the terms of the express trust. We have reviewed appellant's claim, and in light of our disposition of this case and interpretation of the relevant deed provisions, we find it to be without merit.

April 3, 1905, transferring to the grantees title to a part of the subject premises ("the Todd Tract")

> *"In trust nevertheless* to hold and use the same for the public worship of Almighty God according to the faith and discipline of the said Protestant Episcopal Church in the United States of America and of the said Protestant Episcal (sic) Church in the Diocese of Penna. *with authority to erect thereon suitable and necessary buildings* for that purpose and for the use of those engaged and employed therein and thereabout *and for patriotic purposes* and upon the further trust as soon as a charter of incorporation is granted under the laws of Penna. and the constitution and canons of said church to the congregation worshipping therein to convey said land with the buildings and memorials thereon to the said corporation by whatever name it is incorporated and to its successors and assigns." (emphasis supplied)

2. The deed from William M. Stephens and his wife to Rev. Herbert J. Cook, Sarah S. Zulick and Charles W. Comfort dated April 26, 1905, transferring to the grantees title to the remaining part of the subject premises ("the Stephens tract")

> *"In trust nevertheless* to hold and use the same for the purposes of the Washington Memorial Chapel of the Protestant Episcopal Church in the United States of America *with authority to erect thereon suitable and necessary buildings for the* purposes of the Congregation worshipping therein and for the use of those engaged and employed therein and thereabout *and for patriotic purposes* and upon the further trust as soon as a charter of incorporation is granted under the laws of Penns. and the constitution and canons of said Protestant Episcopal Church in the diocese of Penna. to the congregation worshipping therein to convey said land with the buildings and memorials thereon to the said corporation by whatever name it is incorporated and to its successors and assigns." (emphasis supplied)

Petitioner [the Society] introduced into evidence a subsequent deed, dated March 27, 1915, (Exhibit P–12) conveying both the Todd tract and the Stephens tract from the Chapel to the Right Rev. Philip Mercer Rhinelander and the Right Rev. Thomas J. Garland and Charles Custis Harrison. This deed recits [sic] the following:

"Whereas certain gentlemen have agreed to assist Mr. Burk in the work and to contribute the sum of Fifty Thousand Dollars for the completion of the Main Chapel and *Mr. Burk has procured promises of memorials which will probably cost another Fifty Thousand Dollars but said contributors have attached to their agreement the condition that* a portion of said land be conveyed to the Trustees of the Diocese of Pennsylvania and that *another portion thereof be held in Trust for the patriotic work originally included in the plans of the architect of said buildings, and have promised that upon the execution of such a declaration of trust, active efforts will be made by them in cooperation with Mr. Burk to raise the money for the erection of the said patriotic buildings and a building for the Museum of American History.*"

"And whereas the congregation of the said Washington Memorial Chapel is unable to raise said funds without such cooperation . . . ." (emphasis supplied)

This deed continued by authorizing the grantees "in trust to convey to the Trustees of the Protestant Episcopal Church of the Diocese of Pennsylvania, a corporation, so much of said land as to them shall seem proper . . . for the use of the congregation" and then continued

"And upon the further Trust that the said Right Reverend Philip Mercer Rhinelander, Right Reverend Thomas J. Garland and Charles Custis Harrison L.L.D., and their successors in the trust, will hold the remaining part of said lands with such buildings as are now thereon or may hereafter be erected thereon . . . *In trust for such patriotic purposes as may be designated by them in a deed or declaration of trust to be*

*formulated by them in which they shall designate their powers and the method of choosing their successors."* (emphasis supplied)

This deed then set forth verbatim the resolution adopted at a special meeting of the Vestry held on January 2, 1915 unanimously authorizing the deed and specifically authorizing the above-quoted trust language of the deed.

It is noted that neither the grantees in this deed, nor any successor, executed a deed or declaration of trust in accordance with the last-quoted trust language of this deed. However, a letter dated May 1, 1944 from Dr. Hartshorne, Vice-President of the Church Foundation, stated the following:

"There was also a provision looking to The Church Foundation executing a Declaration of Trust. I doubt if that has ever been done, and it hardly seems worth while, as the trust is already described as being for Religious and patriotic purposes .... The decree of merger covers all that; we just absorbed the old Trustees with all their rights and duties, so now (sic) transfers were unnecessary."

And in an earlier letter, dated March 18, 1923, Bishop Garland one of the grantees in the 1915 deed, stated the following:

"... As I remember it, there was on the original plan of the Architect a patriotic building adjoining the Chapel, and when the property was conveyed to the Trustee it was with the stipulation that this property was for patriotic purposes. I agree with you that it is a great pity that there is such an accumulation of objects in the crowded buildings adjoining the Chapel and that it seriously detracts from the appearance but it is housed in the part that is held under the deed of trust for patriotic purposes I question whether we can legally object to it ..."

A trust is created if the relevant instruments of conveyance, taken as a whole, evidence an intent to impose upon the transferee of the property equitable duties to deal

with the property for the benefit of another. *Buchanon v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 143–144, 320 A.2d 117, 122 (1974). By the specific terms of the deeds to the "Todd Tract" dated April 3, 1905, and the "Stephen's Tract" dated April 26, 1905, the title to the real property involved herein was conveyed in trust to be held for *religious* and *patriotic* purposes, both valid charitable uses. *See* RESTATEMENT (SECOND) OF TRUSTS §§ 371, 374 comment e; Decedents, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 6101 et seq.; *Valley Forge Historical Society v. Washington Memorial Chapel*, 493 Pa. 491, 496, 426 A.2d 1123, 1126 (1981). We find that the Chancellor properly concluded that a charitable trust for religion and patriotism was created by the deed provisions cited above because they evidence an intention that the transferees hold the land subject to the equitable duty to use the land for those charitable purposes. *Abel v. Girard Trust Co.*, 365 Pa. 34, 39, 73 A.2d 682, 684–685 (1950).

The terms of the trust for *religious* purposes stated that the property was to be used for the "public worship of Almighty God" according to the faith and discipline of the "Protestant Episcopal Church in the United States of America", and that the property would be transferred in trust to the congregation of the church upon incorporation of the Washington Memorial Chapel according to the precepts of the Protestant Episcopal Church. The terms of the trust for *patriotic* purposes were not specifically set forth in the deed; however, the validity of the trust is not affected by the absence of specific direction by the grantors.

It is axiomatic that a gift is not rendered void because the grantor neglected to specify particular charitable objects. *See In Re Jordan's Estate*, 329 Pa. 427, 197 A. 150 (1938) and cases cited therein. Where the intent to benefit a charitable use is clear, the gift will not be allowed to fail by reason of the object or the beneficiary being indefinite or uncertain as long as the intended beneficiary can be ascertained with reasonable certainty. *In Re Black's Estate*, 398 Pa. 390, 158 A.2d 133 (1960). The

overwhelming evidence in this case demonstrates that the Society was the intended beneficiary of the trust for patriotic purposes.

We note that at the time the property in question was conveyed, neither the Chapel or the Society was incorporated. Instead, both groups were in the early stages of organization, each being under the direction of Reverend W. Herbert Burk, the first Rector of the Chapel and the first President of the Society. As pointed out by the Chancellor, evidence of the intent of the original settlors was not available at the hearing in this case. It is obvious, however, that the provisions in the early deeds were to be carried out by the Reverend Burk, the founder of both the Society and the Chapel. It is clear that the operation of the Chapel and the Society was envisioned as a joint enterprise—a unique blend of religion and patriotism—to be established on the common grounds dedicated by Messrs. Todd and Stephens.

The language of the deed dated March 27, 1915, whereby the Todd and Stephens Tracts were transferred from the Chapel to three different individuals, in trust, conclusively demonstrates that the Valley Forge Museum of American History was to be located on the site of the Washington Memorial. In addition, the following language is significant:

And upon the further Trust that the said Right Reverend Philip Mercer Rhinelander, Right Reverend Thomas J. Garland and Charles Custis Harrison L.L.D., and their *successors* in the trust, will hold the remaining part of said lands with such buildings as are now thereon or may hereafter be erected thereon ... *In trust for such patriotic purposes as may be designated by them in a deed or declaration of trust to be formulated by them in which they shall designate their powers and the method of choosing their* successors." (emphasis added)

It is apparent that the expected, subsequent designation in trust for patriotic purposes was never made by these three trustees, or their successors, because for sixty years, it was accepted that the Society fulfilled the patriotic

purposes of the trust in a way that the Chapel could not. Nevertheless, the failure to make such a designation, does not now justify the Chapel's attempts to frustrate the patriotic purposes of the trust by evicting the Society from its quarters in the Washington Memorial. It is well settled that where there is an intention to dedicate property in trust for a charitable use, the trust will not lapse for failure of a trustee to act. *Abel v. Girard Trust Co.*, 365 Pa. 34, 73 A.2d 682 (1950); RESTATEMENT (SECOND) OF TRUSTS § 397 (1959). The Decedents Estates and Fiduciaries Code, 20 Pa.C.S.A. § 6110 provides in pertinent part:

(a) General rule.—Except as otherwise provided by the conveyor, *if the charitable purpose for which an interest shall be conveyed shall* be or become indefinite or impossible or impractical of fullfilment, or if it shall *not have been carried out* for want of a trustee or *because of the failure of a trustee to designate such purpose, the court may*, on application of the trustee or of any interested person or of the Attorney General, after proof of notice to the Attorney General when he is not the petitioner, *order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor*, whether his charitable intent be general or specific.

 In this case, according to the terms of the relevant deeds, a portion of the property in question was to be held for patriotic purposes, including the establishment of a Museum of American History. The patriotic activities contemplated will not now be permitted to cease merely because the exact terms of the trust for patriotic purposes were not specified. Our review of the history of this case convinces us that the Society was the intended beneficiary of the trust for patriotic purposes and thus, it has the right to remain in its quarters at the Washington Memorial.

 The Chapel now argues that the existence and operation of the Chapel alone upon the original site is sufficient to fulfill the patriotic purposes of the trust. This argument is without merit. The original deed provisions contemplate

more than just the operation of a Chapel on the real property involved herein, and the Chapel's actions indicate a failure to recognize the importance of the patriotic aspects of the Washington Memorial. Indeed, not only have they attempted to oust the Society, but they have expressed the desire to tear down the building that now houses the Society's operations. The present hostility between the Chapel and the Society cannot alter the trust terms; it does not change the fact that the Washington Memorial was established for the inculcation of both religion and patriotism.

 In the past ten years, the Chapel, as successor trustee, has failed to act in a manner that is consistent with the original trust provisions. The working relationship between the parties has obviously deteriorated and we do not perceive that the Chapel, acting as trustee, will be able to fairly determine the respective duties and responsibilities of the parties as joint occupants of the Washington Memorial without some impartial supervision. However, the Chancellor's decree does not provide the necessary detailed guidance to enable the Chapel to execute the trust for the benefit of *both* the Chapel and the Society with a minimum of discord and disagreement. *See Abel v. Girard Trust Co.*, 365 Pa. 34, 73 A.2d 682 (1950); RESTATEMENT (SECOND) OF TRUSTS §§ 388, 392 and 397 (1959). Consequently, we remand this case for a modification of the final decree, to include provisions outlining the respective responsibilities and duties of the parties regarding the expenses, operation and general upkeep of the Washington Memorial. The trial court, in its supervisory capacity, will see that such obligations are fairly allocated between the parties so that the intentions of the original grantors and their successors may be properly carried out.

Decree affirmed in part, modified in part, and remanded for further proceedings not inconsistent with this opinion.

Jurisdiction is relinquished.