In re STEPHEN SMITH HOME FOR THE AGED, INC., Debtor.

STEPHEN SMITH HOME FOR THE AGED, INC., Plaintiff,

v.

MERCY DOUGLASS CENTER, INC., Mellon Bank (East), N.A., First Pennsylvania Bank, N.A., Provident National Bank, Fidelity Bank, Leroy S. Zimmerman, Attorney General of Pennsylvania and John Doe, Defendants.

Misc. No. 87–0455.
Bankruptcy 85–05124F.
Adv. No. 86–0626F.

United States District Court,
E.D. Pennsylvania.

Dec. 10, 1987.

Jonathan H. Ganz, Pincus, Verlin, Hahn & Reich, Philadelphia, Pa., for plaintiff, Stephen Smith Home for the Aged.

Jay Ochroch, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for defendant, Mercy–Douglass Center, Inc.

James F. Monteith, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for defendant, Mellon Bank (East).

John F. Meigs, Wayne B. Weisman, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendants, First Pa. Bank and Provident Nat. Bank.

Robert W. Rowan, Media, Pa., for defendant, Fidelity Bank.

Lawrence Barth, Deputy Atty. Gen. of Pa., Philadelphia, Pa., for defendant.

### ORDER

LUDWIG, District Judge.

AND NOW, this 8th day of December, 1987, after independent review of the recommendation and opinion in support thereof of United States Bankruptcy Judge Bruce Fox, it is ORDERED that:

1. The opinion is approved and adopted.

2. The motion to abstain is granted. The bankruptcy court will therefore not hear the debtor's complaint for declaratory judgment and for accounting. 28 U.S.C. § 1334(c)(1). *See In Re Corporacion de Servicios Medicos Hospitalarios,* 805 F.2d 440, 442–43 (1st Cir.1986) (only district court has jurisdictional authority to issue abstention orders in non-core proceedings).

### OPINION

September 14, 1987.

BRUCE I. FOX, Bankruptcy Judge:

The debtor, Stephen Smith Home For the Aged, Inc., has initiated this adversary proceeding seeking: (1) a determination that it is the "rightful beneficiary" of various charitable bequests and (2) an accounting. Two defendants, supported by other defendants, have filed a motion requesting that I abstain, pursuant to 28 U.S.C. § 1334(c)(1). The debtor and the committee of unsecured creditors oppose this motion. Because I believe that resolution of this

matter would require interpretation of unsettled state probate law and would divest the Orphans' Court Division of the Court of Common Pleas from exercising its statutorily granted discretion, I will recommend to the district court that the motion to abstain be granted.

### I.

For purposes of this motion, the following facts are not in dispute.

The debtor is a not for profit corporation which had provided nursing home services to the elderly; it had been located in Philadelphia for many years. In 1985, its revenues consisted, in part, of various charitable bequests. These bequests are in the form of charitable trusts from which the debtor received a portion of the income. Among the decedents whose wills created these trusts were: Stephen Smith, Edward Parker, Elon Dunbar, Walter Beckett, Lydia Yarnall, Mary Dobbins, and Leandro De La Cuesta. Copies of these wills, some of which were probated almost one hundred years ago, were attached to the pleadings.

In December 1984, the debtor entered into an agreement with Mercy–Douglass Center ("Mercy–Douglass") whereby the debtor agreed to sell "certain assets" to Mercy–Douglass. The agreement identified those assets as consisting of "all of the tangible assets and untangible assets ... owned by the seller ... and used in the operation of seller's skilled nursing and intermediate care facilities and community activity program...." Among the specified assets were equipment, machinery, real estate and the debtor's name. The agreement was completed and the debtor ceased operations on May 31, 1985.

On December 12, 1985, the debtor filed a voluntary petition in bankruptcy under chapter 11. Its plan of reorganization, which has been approved by its creditors and this court, requires the debtor to distribute all funds derived from the liquidation of its assets in accordance with a distributional scheme established by the liq-

uidating plan.[1] Because the December 1984 agreement made no express reference to debtor's income from the charitable trusts, the debtor and Mercy–Douglass dispute the other's entitlement to such income. In order to resolve this dispute, the debtor filed this adversary proceeding naming as defendants Mercy–Douglass, the various Philadelphia banks which are the trustees for these charitable trusts, and the Attorney General for the Commonwealth of Pennsylvania. By agreement of the parties, the trustees have retained the income payments formerly made to the debtor pending the outcome of the dispute, thus necessitating the debtor's request for an accounting.

Two of the trustees, First Pennsylvania Bank N.A. and Provident National Bank, have requested that I exercise my discretion and abstain because, in their view, to resolve this dispute requires that I interpret the various will provisions which established these charitable trusts. The debtor argues that this dispute requires only that I interpret the contract for the sale of assets and determine whether the debtor transferred its right to receive payments from the trusts. Mellon Bank argues that I have no "jurisdiction" to decide this dispute because state law grants to Orphans' Court the sole authority to determine whether the debtor, Mercy–Douglass, or some other entity should receive the income from the trusts. The Attorney General has taken no position on this motion.

## II.

Before turning to the merits of the motion to abstain, the debtor preliminarily argues that the movant banks are collaterally estopped from pressing this motion. The debtor asserts that, prior to the debtor's bankruptcy filing, Mercy–Douglass had begun a state court action to resolve the entitlement question. After the bankruptcy was filed, Mercy–Douglass requested

relief from the automatic stay, under 11 U.S.C. § 362(d)(1), to pursue the state court matter. The request was denied by opinion and order of former Chief Judge Goldhaber dated September 10, 1986. The court reasoned that the dispute between these two parties was one largely of contract which could be resolved easily by a bankruptcy court; thus, there was no "cause" to grant relief. From this ruling, debtor contends that all defendants are barred from requesting abstention, since the practical result of abstention is to permit a state court to resolve this matter—the very result previously sought.

The general rule is that collateral estoppel can only be applied when (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) it was determined by a valid and final judgment; (4) the determination was essential to the prior judgment; and (5) the party against whom the estoppel is asserted was a party, or in privity with a party, to the prior adjudication. *Compare Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974) *with Matter of Ross*, 602 F.2d 604, 608 (3d Cir.1979); *Haize v. Hanover Insurance Co.*, 536 F.2d 576, 579 (3d Cir.1976). *See also Restatement (Second) Judgments* § 27 (1980). Also relevant in the inquiry is the doctrine of mutuality. Under this doctrine, "neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–27, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (footnote omitted). The Supreme Court has held that the mutuality doctrine does not bar the use of "defensive" collateral estoppel, *i.e.* where the prior judgment is invoked by a defendant against a plaintiff bringing suit on an issue he litigated previously as a plaintiff and lost against another defendant. *Blonder–Tongue Laboratories, Inc. v. University of*

1. It is unclear whether the debtor believes that it can assert a claim against the trust principal, whether it seeks interest payments up to the time of its bankruptcy filing or whether it anticipates receiving income payments throughout

the life of its plan. If the last alternative is the debtor's position, the length of the plan could theoretically be infinite (unless the trust income accrues at a faster rate than any interest to be paid under the plan).

*Illinois Foundation*, 402 U.S. 313, 324, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971), *cited in Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 267 (3d Cir.1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). The federal courts also have discretion to allow a party to use collateral estoppel "offensively," *i.e.*, where a plaintiff seeks to estop a defendant from relitigating issues the defendant previously litigated and lost against another plaintiff. *Parklane Hosiery Co. v. Shore.*

▇ Application of the foregoing principles dictates the conclusion that the debtor may not invoke collateral estoppel in this case. First, the movants were not parties to the prior proceeding. At the debtor's insistence, the movants were denied the right to participate at that hearing due to their lack of standing.[2] (N.T. at 12, July 3, 1986). Nor were the movants in privity with Mercy–Douglass, the losing party in the prior proceeding. The trustee's fiduciary duty to give effect to the intent of the settlor, *see Coleman Estate*, 456 Pa. 163, 317 A.2d 631 (1974); *cf. Valley Forge Historical Society v. Washington Memorial Chapel*, 330 Pa.Super. 494, 510, 479 A.2d 1011, 1020 (1984) ("where there is an intention to dedicate property in trust for a charitable use, the trust will not lapse for failure of the trustee to act"), may obligate them to challenge Mercy–Douglass' request to become beneficiary. Finally, due to the movants' exclusion from the prior proceedings, this is not a situation in which "defensive" collateral estoppel is appropriate. This case does not involve an effort by a respondent who seeks to estop a movant who litigated and lost the same issue against a different respondent. Rather,

this case involves an attempt to invoke estoppel by a [party] who *was* a party to an earlier proceeding against a [party] who was *not* a party to, nor in privity

with a party, nor a participant in that earlier proceeding.

... It should be obvious that collateral estoppel would be manifestly unfair ... in this case.

*In re Queeny/Corinthos*, 503 F.Supp. 365, 366 (E.D.Pa.1980). To allow the use of collateral estoppel in this situation would also violate due process. *See Parklane Hosiery v. Shore*, 439 U.S. at 327 n. 7, 99 S.Ct. at 649 n. 7.

Therefore, movants are not collaterally estopped from requesting abstention.

**III.**

▇ At bottom, this adversary proceeding seeks a determination of the extent of this debtor's estate. That is, what property interests does the debtor possess which can be distributed to its creditors? The scope of the debtor's estate is defined by 11 U.S.C. § 541, which limits the estate to property interests held by the debtor at the time the bankruptcy petition was filed. 11 U.S.C. § 541(a); *accord*, 4 *Collier on Bankruptcy*, ¶ 541.04 (15th ed. 1987) ("*Collier*"). However, in enacting section 541, Congress understood that, in large measure, nonbankruptcy law would define the debtor's property interest and thereby determine the contents of the debtor's estate. *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir.1986):

[Section 541(a)] merely defines what interests of the debtor are transferred to the estate. It does not address the threshold questions of the existence and scope of the debtor's interest in a given asset. Under both the Act and the Code we resolve these questions by reference to nonbankruptcy law.

*Accord*, 4 *Collier* ¶ 541.02[1]. Typically, a determination of the extent of the debtor's estate involves interpretation of state law. *See In re Loughnane*, 28 B.R. 940, 942 (Bankr.D.Colo.1983). This interpretation is undertaken by the bankruptcy court and

---

**2.** I note that the debtor argued at the relief from stay hearing that the movants and Mercy–Douglass were really asking the court to abstain and that the abstention issue should be resolved only upon a proper motion filed in the context of an adversary proceeding. Thus, based on the posi-

tion the debtors took at the prior hearing, the issues raised by the present abstention motion would not have been either actually or necessarily decided by the court in denying the motion for relief from stay.

normally does not implicate abstention concerns. *See State of Missouri v. United States Bankruptcy Court of Eastern District of Arkansas,* 647 F.2d 768, 774 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982) (bankruptcy court must make "final determination of property interest").

Abstention, as the debtor notes, is an exception to extensive jurisdictional grant provided by Congress under the Bankruptcy Reform Act of 1978, in order to facilitate the administration of bankruptcy cases. *In re Earle Industries, Inc.,* 72 B.R. 131, 134 (Bankr.E.D.Pa.1987); *Matter of Krupke,* 57 B.R. 523, 524 (Bankr.W.D. Wisc.1986); *In re DeLorean,* 49 B.R. 900, 910 (Bankr.E.D.Mich.1985). The current abstention provisions found in 28 U.S.C. § 1334(c)(1), (2), represent a Congressional compromise which attempts to achieve a balance among various concerns—including the constitutional concerns as expressed by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), principles of federalism, as well as the pragmatic problems which gave rise to the Congressional desire to eliminate summary-plenary jurisdiction disputes that had existed under the former Act.

In certain matters, abstention is mandated. 28 U.S.C. § 1334(c)(2). However, movants do not contend that this matter is among those disputes requiring abstention. *See In re Futura Industries, Inc.,* 69 B.R. 831 (Bankr.E.D.Pa.1987) (setting forth the factors which mandate abstention). Rather, the banks argue that discretionary abstention, pursuant to 28 U.S.C. § 1334(c)(1) is appropriate. They posit that resolution of this dispute requires construction of various will provisions, and that this determination, which falls within the expertise of the Pennsylvania Orphans' Court, is better left to that forum.

In a previous decision, I have recognized:

In contrast to mandatory abstention, section 1334(c)(1) is derived from former 28 U.S.C. § 1471(d) which, in turn, was a statutory response to concerns articulated in *Thompson v. Magnolia Petrole-*

*um Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); H.R.Rep. No. 595, 95th Cong., 1st Sess. 446 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787; *accord, In re Cemetery Development Cor.,* 59 B.R. [115] at 125 [Bankr.M.D.La. 1986]; 1 *Collier* ¶ 3.01 at 3–57 to 58. *In re Earle Industries, Inc.,* 72 B.R. at 133.

In *Thompson,* the Supreme Court held that:

A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to state courts of particular controversies involving unsettled questions of state property law and arising in the course of bankruptcy administration.... Unless the matter is referred to the state courts, upon subsequent decision by the Supreme Court of Illinois it may appear that rights in local property of parties to this proceeding have—by accident of federal jurisdiction—been determined contrary to the law of the state which in such matters is supreme.

309 U.S. at 483–84, 60 S.Ct. at 630–31 (citations omitted). *See also In re Kaleidoscope, Inc.,* 25 B.R. 729, 742 (N.D.Ga.1982).

Allowing state courts to first decide unsettled cases of state law is but one aspect of comity and federalism. Another is the recognition of important state interests in the outcome of various disputes. *See, e.g., Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1138–43, 1148–53 (1974). *See also Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Matter of Davis,* 691 F.2d 176 (3d Cir.1982). Both aspects of comity are implicated by the matter at bench.

The debtor presents this dispute as a matter of contract interpretation, while movants believe the primary issue is one of

interpretation of certain will provisions. However, I agree with the position of Mellon Bank[3] that statutory construction of the Nonprofit Corporation Law of 1972, 15 Pa.C.S.A. §§ 7301 *et seq.*, should be resolved before examining either the contract or the will terms.

The extensive oversight by the Commonwealth of Pennsylvania in charitable trusts within its jurisdiction is a matter of longstanding. As Justice Roberts observed in *Coleman Estate:*

> A charitable trust is initially and continuously subject to the *parens patriae* power of the Commonwealth and the supervisory jurisdiction of its court.

456 Pa. at 168, 317 A.2d at 634.

> The beneficiary of charitable trusts is the general public to whom the social and economic advantages of the trust accrue. But because the public is the object of the settlor's benefactions, private parties have insufficient financial interest in charitable trusts to oversee their enforcement. Consequently, the Commonwealth itself must perform the function if charitable trusts are to be properly supervised.

*Pruner Estate*, 390 Pa. 529, 531, 136 A.2d 107, 109 (1957) (footnotes omitted); *accord, Garrison Estate*, 391 Pa. 234, 137 A.2d 321 (1958).

State oversight of charitable trusts is accomplished by delegating to the state Attorney General the parens patriae powers of the Commonwealth. *See Coleman Estate*, 456 Pa. at 168, 317 A.2d at 634; *Garrison Estate*, 391 Pa. at 238–39, 137 A.2d at 323–24. Thus, the Attorney General is a party in interest in all disputes concerning charitable trusts and he must receive proper notice of the proceedings. *Garrison Estate; Little Estate*, 403 Pa. 534, 539, 170 A.2d 106 (1961).[4] In addition to delegating this authority to the Attorney General, the state has also determined that the Orphans' Court Division of the Court of Common Pleas "with its control and direction of trustees in the use and disposition of property belonging to corporate charities, exercises broad visitorial and supervisory power of the Commonwealth, and its jurisdiction is exclusive." *Craig Estate*, 356 Pa. 564, 569, 52 A.2d 650, 652 (1947); *Coleman Estate*, 456 Pa. at 169, 317 A.2d at 634 ("the orphans' court has plenary power to ensure the competency and performance of trustees"). *See also Valley Forge Historical Society v. Washington Memorial Chapel*, 330 Pa.Super. at 501, 479 A.2d at 1015.

Not only does Orphans' Court supervise charitable trustees, resolve disputes concerning the trusts, which also involve the Attorney General, and help determine the settlor's intent in establishing those trusts, but this state court also exercises "cy pres" power. The doctrine of cy pres is involved only "in the event that the charitable purposes of the conveyor are frustrated or incapable of fulfillment." *Bodine Trust*, 429 Pa. 260, 263, 239 A.2d 315, 316 (1968). "The application of the doctrine ... should effectuate the intent of the testator as nearly as humanly possible." *Kay Estate*, 456 Pa. 43, 52, 317 A.2d 193, 198 (1974).[5]

---

**3.** I disagree with Mellon's assertion that this court has no subject matter jurisdiction to resolve this dispute. An essential element of bankruptcy court jurisdiction must be to determine the debtor's property interest and to assert control over that asset. *See State of Missouri v. United States Bankruptcy Court for the Eastern District of Arkansas.* Otherwise, the much criticized summary/plenary distinction of the former Bankruptcy Act is revisited.

**4.** As a result, the debtor joined the Attorney General as a party in this action.

**5.** In Pennsylvania, the cy pres principal was codified as part of The Probate, Estates and Fiduciaries Code of 1972, 20 Pa.C.S.A. § 6110:

Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impractical of fulfillment, or if it shall not have been carried out for want of a trustee or because of the failure of a trustee to designate such purpose, the court may, on application of the trustee or of any interested person or of the Attorney General of the Commonwealth, after proof of notice to the Attorney General of the Commonwealth when he is not the petitioner, order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor, whether his charitable intent be general or specific.

In the matter at bench, Mercy–Douglass and the debtor argue as though their agreement of December 1984 will solely determine which of them will be beneficiary of the various charitable trusts. However, 15 Pa.C.S.A. § 7552, which was newly enacted as part of the 1972 revisions to the Corporation Not–For–Profit Code, may allow the Commonwealth, acting through its Orphans' Court and Attorney General, to conclude otherwise. The statute states:

A devise, bequest or gift to be effective in the future, in trust or otherwise, to or for a nonprofit corporation which has:

(1) changed its purposes;

(2) sold, leased away or exchanged all or substantially all or substantially all its property and assets;

(3) been converted into a business corporation;

(4) become a party to a consolidation or a division;

(5) become a party to a merger which it did not survive; or

(6) been dissolved;

after the execution of the document containing such devise, bequest or gift shall be effective only as a court having jurisdiction over the assets may order under the Estates Act of 1947 [6] or other applicable provision of law.

This statutory provision has no ancestor in the Nonprofit Corporation Law of 1933 and no case is reported construing the terms of § 7552. Where the earlier Act, former 15 P.S. § 7809, was held to forbid the application of the cy pres doctrine when a charitable beneficiary merged with another non profit entity, so long as the surviving corporation continued the same charitable purposes of its predecessor, *Bodine Trust*, such a holding may no longer be valid. *See* 15 Pa.C.S.A. § 7929(b) (succes-sor to 15 P.S. § 7809, which incorporates the provisions of § 7552).

Thus, current state law vests discretion in Orphans' Court to decide who should be beneficiary of various charitable trusts after the debtors' prepetition sale of assets. That court may decide that the settlors' interest would be served by permitting the debtor, Mercy–Douglass, or some other charitable institution to become beneficiary. *See Craig Estate; Glase Estate*, 384 Pa. 118, 119 A.2d 294 (1956); *Morrell Trust*, 61 Pa.D. & C.2d 115 (O.C.Phila. 1973); *Davis Trust*, 47 Pa.D. & C.2d 184 (O.C.Wash.1968); *Brown Trust*, 10 Pa.D. & C.2d 93 (O.C.Phila.1957). The Orphans' Court, in theory, also has the authority to dissolve the trust completely if it believes its funds are now inadequate to serve the intended charitable purpose. *Wanamaker Estate*, 364 Pa. 248, 72 A.2d 106 (1950).

In order for this bankruptcy court to resolve this adversary proceeding, I would be forced to construe a statute never interpreted before and to exercise discretion statutorily afforded the Orphans' Court, which has expertise in the matter and whose discretion must be exercised for the benefit of the citizens of the Commonwealth. Thus, this dispute falls squarely within the parameters of § 1334(c)(1) and discretionary abstention is appropriate. *Accord, e.g., Harley Hotels, Inc. v. Rain's International, Ltd.*, 57 B.R. 773 (M.D.Pa. 1985) (unsettled issues of state law which affect state policy provide grounds to abstain); *Matter of Bob Lee Beauty Supply Co.*, 56 B.R. 17 (Bankr.M.D.Ala.1985) (probate matter should be decided by state court); *In re Eastern Consolidated Utilities, Inc.*, 17 B.R. 809 (Bankr.E.D.Pa.1982) (bankruptcy court should defer to specialized state forum due to its expertise); *In re Remington*, 14 B.R. 496, 504 (Bankr.D.N.J. 1981) (state court should interpret certain will provisions).[7]

---

**6.** The reference to "a court" is to Orphans' Court and the reference to the Estate Act of 1947 is now 20 Pa.C.S.A. §§ 6101 to 6117. This includes the cy pres powers. *See* 15 Pa.C.S.A. § 7552 n. 1 (West Supp.1987).

**7.** I note that no evidence was presented in this case regarding the importance, if any, of the charitable bequests on the debtor's ability to implement its confirmed chapter 11 liquidating plan. I do not consider whether such evidence would have affected the outcome herein.

## IV.

▮ To the extent that the debtor asserts that 11 U.S.C. § 541(c) alters this result, I must disagree. Under the former Bankruptcy Act of 1898, the trustee in bankruptcy became vested in the bankrupt beneficiary's interest in a trust only to the extent that such interest was "capable of being assigned or transferred by the bankrupt or was subject to attachment, seizure or judicial sale." 4A *Collier* ¶ 70.26, at 364 (14th ed. 1978) (footnote omitted). Although not clearly stated, the debtor may be arguing the Bankruptcy Code altered this result and that any restrictions imposed by either state law or the will instruments themselves are overridden by section 541(c)(1).

Certainly, Congress accepted some suggestions made by the Commission on the Bankruptcy Laws of the United States which recommended passage of, what is now, section 541(c)(1). *See Report of the Commission on the Bankruptcy Laws of the United States*, H.R. Doc. No. 93–137, 93d Cong., 1st Sess., Part I at 197–198,; *id.*, Part II at 147–148, 151. The House version of section 541(c) ultimately was enacted and the House Report describes the purpose of this subsection:

Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all of the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition transfer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case, or on the appointment of a custodian of the debtor's property. Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 369 (1972), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6325.

Insofar as § 541(c)(1) is concerned, it insures that property of the debtor, which would be part of the debtor's estate under § 541(a), will not be excluded from the estate solely due to provisions either of nonbankruptcy law or of any agreement that restricts or conditions transfer of such interest by the debtor. *See In re Farmers Markets, Inc.*, 792 F.2d at 1402:

Section 541(c)(1)(A), however, avoids only those restrictions which prevent transfer of the debtor's property to the estate.... *See also In re Polycorp Associates, Inc.*, 47 Bankr. [B.R.] 671, 672 (Bankr.N.D. Cal.1985) ("The plain meaning of the [legislative history] is that 541(c)(1)(A) is intended to eliminate barriers to the transfer of property to the estate, and nothing more"); 4 *Collier on Bankruptcy* ¶ 541–22, at 541–100 to 541–101 (15th ed. 1985). Further, by its terms § 541(c)(1)(A) applies only to "interest[s] of the debtor in property."

Section 541(c)(2) excludes certain property interests from the estate: "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable in a case under this title." The debtor argues from the legislative history that this provision applies only to spendthrift trusts, not charitable trusts. *See Matter of Hecht*, 54 B.R. 379 (Bankr.S.D.N.Y.1985), *aff'd*, 69 B.R. 290 (S.D.N.Y.1987). The banks contend that to the extent a charitable trust contains the same restrictions upon alienation of income and principal as a spendthrift trust it falls within the provisions of § 541(c)(2). *Cf. Matter of Mandalay Shores Co–Op Housing Association*, 44 B.R. 1017 (Bankr.M.D.Fla.1984) (court implies that charitable trusts may fall within subsection 541(c)(2)). I conclude, however, that I do not need to interpret the scope of this subsection in order to resolve the current dispute.

Implicit within the terms of § 541(c) is that the debtor possess a property interest at the time the bankruptcy petition is filed. *See In re West*, 64 B.R. 738, 744 n. 12 (Bankr.D.Or.1986). Section 541(a) does not give to the estate more than the debtor possessed at the time of filing. *See In re Schauer*, 62 B.R. 526, 529–30 (Bankr.D. Minn.1986); *In re Rouse*, 48 B.R. 236, 240

(Bankr.E.D.Pa.1985). Subsection (c)(1) of section 541 insures that the estate receives all of the debtor's interests except those excluded by subsection (c)(2). Thus, whether section 541(c)(1) is relevant here depends upon whether the debtor had any interest in the charitable trust after it entered into the sale agreement with Mercy–Douglass. The answer, as noted previously, concerns unsettled issues of state law. Therefore, to the extent the debtor believes that any property rights are lost by virtue of its agreement with Mercy–Douglass can be resurrected by section 541(c)(1), I must respectfully disagree. *See In re Farmers Market, Inc.; In re Schauer.*

### V.

■ Having determined that discretionary abstention under § 1334(c)(1) is appropriate, I also conclude that any order to this effect should be entered by the district court. As I previously noted in *In re Futura Industries, Inc.,* 69 B.R. at 836–37, bankruptcy courts should not enter binding final orders granting abstention in noncore proceedings. First, orders granting abstention, even those under section 1334(c)(1), may not be reviewable. *See In re Cemetery Development Corp.,* 59 B.R. 115, 128 n. 32 (Bankr.M.D.La.1986); 1 *Collier* ¶ 3.01, at 3–58. This matter, which is brought by the debtor against noncreditors seeking a determination of the debtor's property rights under state law, is probably a noncore proceeding. *See UNR Industries, Inc. v. Continental Insurance Co.,* 623 F.Supp. 1319 (N.D.Ill.1985). Congress intended, by virtue of 28 U.S.C. 157(c), to insure that the district court made all final determinations in noncore proceedings unless the parties consented otherwise. Here, these parties have not consented. Therefore, a recommendation to abstain will be sent to the district court.