In re BANKRUPTCY APPEAL OF AL-LEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION ("AHERF").

Appeal Of Order(S) Staying/ Enjoining Orphans Court Proceedings.

No. CIV.A.98–1993.

United States District Court,
W.D. Pennsylvania.

Feb. 1, 1999.

See also 252 B.R. 332.

Thomas F. Halloran, Mark A. Pacella, Robert C. Edmundson, Office of the Attorney General, Sean R. Sullivan, Kirkpatrick & Lockhart, Philip E. Beard, Norman E.

Gilkey, Michael J. Bodner, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, PA, Jean R. Robertson, Lee D. Powar, Hahn, Loeser & Parks, Cleveland, OH, David A. Murdoch, Ellen L. Surloff, David L. McClenahan, Robert L. Byer, Kirkpatrick & Lockhart, Pittsburgh, PA, for Commonwealth of Pennsylvania, by D. Michael Fisher, Attorney General, Allegheny University Medical Practices, Allegheny General Hospital, Allegheny Singer Research Institute, Allegheny University Hospitals–West, appellants.

Douglas A. Campbell, Stanley E. Levine, Campbell & Levine, Pittsburgh, PA, David G. Heiman, Richard M. Cieri, Robert W. Hamilton, Jones, Day, Reavis & Pogue, Cleveland, OH, for Official Committee of Unsecured Creditors of Allegheny Health, Education and Research Foundation, appellees.

Gary Philip Nelson, Sherrard, German & Kelly, Pittsburgh, PA, for Western Pennsylvania Healthcare System, Inc.

Daniel I. Booker, Eric A. Schaffer, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for Highmark Blue Cross Blue Shield.

## MEMORANDUM OPINION

LEE, District Judge.

Before the Court is the Commonwealth of Pennsylvania's Emergency Motion to Stay the November 2, 1998, and November 30, 1998 Orders of the Bankruptcy Court pending Disposition of Appeal (Document No. 1 at Civil Action 98–1993), pursuant to Bankruptcy Rule 8005, Stay Pending Appeal. The Commonwealth's motion seeks a stay, pending disposition of the appeal in this Court, of the November 2nd and 30th Orders of the Bankruptcy Court restraining the Commonwealth from taking any further action in the equity proceedings initiated in the Court of Common Pleas of Allegheny County, Pennsylvania, Orphans' Court Division ("the Orphans' Court"), and declaring null and void the *ex parte* order entered October 23, 1998, by the Honorable Robert A. Kelly, President Judge of that Court. The Bankruptcy Court ruled the *ex parte* order violated section 362(a), the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a). Alternatively, the Bankruptcy Court indicated it enjoined the Orphans' Court litigation by its authority under section 105(a) to issue orders "necessary or appropriate to carry out the provisions" of the Code, 11 U.S.C. § 105(a). On December 2, 1998, this Court held an emergency hearing on the Commonwealth's motion, but has not ruled on same in light of the passage of the immediate emergency (the then-imminent sale of certain of debtors' affiliate institutions) and while awaiting submission of responses and memoranda in opposition thereto.

Additionally, Allegheny General Hospital, Allegheny Singer Research Institute, Allegheny University Medical Centers and Allegheny University Hospitals–West, the "Non-Debtor Entities," appealed the Bankruptcy Court's Order of November 30, 1998, which appeal was docketed in this Court on January 6, 1999, at Civil Action No. 99–0012, (now consolidated at Civil Action No. 98–1993). The Non-Debtor Entities also have filed a Motion to Stay the November 30, 1998 Order of the Bankruptcy Court Pending Disposition of Appeal or, in the Alternative, to Expedite Disposition of the Appeal (docketed as Document No. 11 at Civil Action No. 98–1993). Interested parties have filed responses and memoranda in opposition thereto.

By order of January 26, 1999, this Court granted the separate motions of Western Pennsylvania Healthcare System, Inc. and Highmark Blue Cross Blue Shield for leave to file briefs as amici curiae in support of the Commonwealth's emergency motion for stay pending appeal, and accepted the briefs they attached to their respective motions for that purpose.

*Background*

Allegheny Health, Education and Research Foundation ("AHERF") is the sup-

porting foundation for a number of entities which form a statewide umbrella system of health care institutions. AHERF and four affiliated entities, Allegheny University of the Health Sciences, Allegheny University Medical Practices, Allegheny Hospitals Centennial, and Allegheny University Hospitals-East (collectively "Debtors"), filed separate Chapter 11 bankruptcy petitions that have been consolidated for administration in the United States Bankruptcy Court for the Western District of Pennsylvania at Case Nos. 98–25773 through 98–25777. The four Non-Debtor Entities have not filed for bankruptcy.

While the bankruptcy proceeded in the Bankruptcy Court, on October 23, 1998, the Attorney General of the Commonwealth of Pennsylvania, D. Michael Fischer, asserting his *parens patriae* authority to protect the public interests, and purporting to act pursuant to the Pennsylvania Non-Profit Corporation Law of 1988, *as amended*, 15 Pa.C.S. §§ 5101–5989, and the Pennsylvania Probate, Estates and Fiduciaries Code of 1972, *as amended*, 20 Pa.C.S. §§ 101–8815, initiated litigation in the Orphans' Court against AHERF and the four Non-Debtor Entities, each of which was named as a respondent. Specifically, the Attorney General filed and presented to the Orphans' Court (i) a Petition for Citation for Rule to Show Cause Why an Independent Interim Trustee Should Not Be Appointed to Administer the Respondent Endowments, Why the Respondents' Conflicted Directors Should Not Be Removed and Why the Respondents' Articles of Incorporation Should Not Be Amended, R. 14a–26a; and (ii) a Motion for Special Ex Parte Relief Pursuant to 42 Pa.R.C.P. No. 1531(a). R. 7a–11a.[1]

The petition for a rule to show cause asserts, *inter alia:* ¶ 9—respondents each operate as domestic, nonprofit charitable organizations dedicated to providing health care and promoting the "general health, rehabilitation, or social needs of the general public; and engaging in other activities which support scientific, educational or other charitable purposes;" ¶ 11—"AHERF operates as the sole member of the respondents and its several other affiliates, and by virtue of various provisions in its organizational structure, enjoys the authority to replace the respondents' directors at will;" ¶¶ 12–13—AHERF and the four debtor affiliates on July 21, 1998, filed separate Chapter 11 bankruptcy petitions to reorganize their respective debts and business affairs, and their bankruptcy filings disclose liabilities in the amount of some $1.3 billion, a sum substantially in excess of the value of their joint assets; ¶¶ 15–16—in light of the bankruptcy proceedings, the Commonwealth initiated an investigation and audit of the debtors' administration of their restricted gifts and endowments, which was still in its preliminary stages, but nevertheless disclosed that invasions of principal had occurred in the form of "loans" made to the debtors and taken against the debtors' endowments to meet the financial shortfalls of the debtor affiliates; said loans were taken in the months immediately preceding the filing of debtors' bankruptcy petitions at a time that debtors' directors and officers knew or should have known that the debtors would not be able to repay or replenish their endowments, and appeared to be "imprudent, illegal, acts of self-dealing that were effected without the requisite approval of any appropriate Orphans' Court."; ¶ 17—"the respondents all have certain di-

---

**1.** Pa.R.Civ.P. 1531(a) provides, in relevant part:

A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special

injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.

rectors in common with AHERF, who as a result of the bankruptcy actions, now suffer irreconcilable conflicts of interest in that the directors are charged with satisfying the claims of the debtors' creditors while contemporaneously fulfilling the charitable missions of the respondents."

Count One requests the Orphans' Court to appoint an interim trustee to administer respondents' endowments "in order to provide for their adequate security until such time as the Commonwealth completes its audit and investigation," based on the inherent conflicts of interest between respondents' fiduciary duty to "beneficiaries, contributors and the general public for the due administration of all moneys donated, granted, devised, or otherwise committed to them for the accomplishment of their charitable missions," on the one hand, and on the other, to the creditors of the debtors. Petition for Rule to Show Cause, ¶¶ 19–21. Count One relies on section 5547(b) of the Non-Profit Corporation Law, 15 Pa.C.S. § 5547(b) directing that property shall not be diverted from charitable purposes for which it was donated, granted or devised unless and until the board of directors of the charitable corporation obtains from the court an order relating to and specifying the disposition of the property. *Id.*, ¶ 20.

Count Two seeks removal of respondents' "conflicted directors" pursuant to certain provisions of the Non-Profit Corporation Law and the Probate, Estate and Fiduciaries Code for violation of these directors' fiduciary duties under Pennsylvania law, because "the conflicted directors can no longer serve the charitable missions of the respondents and contemporaneously serve to reorganize AHERF's debts, much less the debts of AHERF's debtor affiliates. In truth, the charitable missions and AHERF's debtor affiliates have, for all practical purposes, wholly failed and satisfying creditors' claims is now paramount in

the debtors' Chapter 11 reorganizations—thus, the bankruptcy actions no longer serve any further or meaningful charitable purpose." *Id.*, ¶ 27–28.

Finally, Count Three requests the Orphans' Court to amend all of the respondents' Articles of Incorporation "to eliminate or otherwise render void AHERF's standing as respondents' sole member and/or AHERF's power to remove, appoint, elect or otherwise affect the compositions of the respondents' Boards of Directors." *Id.*, ¶ 35.

Accompanying said Petition for Rule to Show Cause was the Motion for Special Ex Parte Relief pursuant to Pa.R.Civ.P. 1531(a), which:

> Based upon the allegations contained in the subject petition, unless immediate injunctive relief is granted by the court, *ex parte*, the petitioners as *parens patriae* and the residents of Pennsylvania will suffer immediate and irreparable harm in that:
>
> (a) Due to the organizational structure of the respondents, the respondents' parent, Allegheny Health, Education and Research Foundation (AHERF), enjoys the right to replace the respondents' directors at will;
>
> (b) Pursuant to the pending bankruptcy actions of AHERF and its other debtor affiliates, their bankruptcy creditors may be able to replace AHERF's Board of Directors with a trustee or trustees of their creditors' own choosing;[2]
>
> (c) Indeed, the Commonwealth believes that AHERF's creditors are prepared to effect the appointment of their designated trustee(s) soon, if not immediately, after the pending sale of the debtors' assets becomes binding or is abandoned—a determination expected by the close of business on Monday, October 26, 1998;

2. On December 2, 1998, the Bankruptcy Court issued an order appointing William J. Scharffenberger as the Trustee in Bankruptcy.

(d) Once AHERF's creditors effect such an appointment, their designated trustee(s) will then have the authority to replace the Boards of Directors of the respondents for the express purpose, among other things, of "voluntarily committing" the respondents and their assets to the Chapter 11 bankruptcy proceedings;

(e) Once committed to the bankruptcy, the respondents' assets will be liquidated to satisfy the creditors of AHERF and its debtor affiliates.

3. Accordingly, in order to protect and preserve the charitable assets and missions of the respondents from the reach of AHERF's creditors, the respondents' Articles of Incorporation must be amended to eliminate or otherwise render void AHERF's standing as respondents' sole member as well as AHERF's power to remove, appoint, elect or otherwise affect the composition of the respondents Boards of Directors.

4. Otherwise, the respondents' assets, consisting of scarce charitable resources literally worth hundreds of million of dollars, will be lost to creditors having no direct claims or rights against the respondents'.

5. Under the above circumstances, the Commonwealth has no adequate remedy at law.

Motion for Special Ex Parte Relief, ¶¶ 2–5, R. 9a–10a.

The Orphans' Court entered the *ex parte* order, which stated:

The respondents and their parent, Allegheny Health, Education and Research Foundation, are individually and collectively enjoined until further order of this Court and after notice to the Commonwealth, from further

a. Removing, appointing, electing or otherwise affecting the composition of any of the respondents' Boards of Directors, and

b. With the exception of AHERF, selling, transferring, exchanging, leasing, or otherwise disposing of assets, other than is necessary for carrying on the respondents' usual, day-to-day, business operations.

Orphans' Court Order, October 23, 1998, R. 12a–13a. Judge Kelly set a hearing on the Petition for Rule to Show Cause for the following Monday, October 26, 1998, at 10:00 a.m., for the purposes of determining whether the *ex parte* order should be dissolved or continued preliminarily until such time as the Orphans' Court proceedings would be ultimately determined.

On Sunday, October 25, 1998, with notice to and participation by the Commonwealth, the Bankruptcy Court conducted a telephone conference on the oral Emergency Motion of Official Committee of Unsecured Creditors for an Interim Order Enforcing the Automatic Stay and Enjoining the Actions of the Commonwealth of Pennsylvania by its Attorney General, D. Michael Fisher, pursuant to 11 U.S.C. §§ 362 and 105(a) of the United States Bankruptcy Code. That same day, the Bankruptcy Court issued an Interim Order, which, in pertinent part:

A. Found that notice of this hearing was adequate under all of the circumstances.

B. Found that the "Orphans' Court Litigation involves, among other things, AHERF's equity or other interests in the Non-Debtor Respondents, which interests are part of AHERF's Chapter 11 estate under section 541(a) of the Bankruptcy Code. This Court has *exclusive* jurisdiction over such property under section 1534(e) of Title 28, United States Code."

C. Held it is for the Bankruptcy Court to determine whether a particular action violates the automatic stay.

D. Held that "The commencement and continuation of the Orphans' Court litigation is violative of sections 362(a)(1) and (3) of the Bankruptcy Code because: (1) the Orphans' Court Litigation could have been commenced before the commencement of the Debtors' Chapter 11

cases; ... and (2) the commencement and continuation of the Orphans' Court Litigation is an act to obtain possession of the property of the Debtors' estate or to exercise control over such property...."

E. Held that "Accordingly, the (1) Preliminary Order and (2) actions taken by the Commonwealth by commencing and continuing the Orphans' Court Litigation are in violation of the automatic stay of section 362(a) and are void *ab initio*....

F. "Moreover, none of the exceptions to the automatic stay afforded under section 362(b) of the Bankruptcy Code is applicable with respect to the Orphans' Court Litigation. The relief sought by the Commonwealth in the Orphans' Court Litigation is far in excess of any police or regulatory power authorized under section 362(b)(4) of the Bankruptcy Code. *See, e.g., Hillis Motors, Inc., v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 591 (9th Cir.1993) (finding that the 'government powers' exceptions to the automatic stay do not apply to actions by a governmental unit to exercise control over property of a Debtors' estate.)"

G. Finally, the Bankruptcy Court found that even if the Orphans' Court proceedings did not violate the automatic stay, "the Court has the power under § 105(a) of the Bankruptcy Code to enjoin prosecution of the Orphans' Court Litigation and enforcement of the preliminary order.... A stay of the Orphans' Court Litigation and the enforcement of the preliminary order is necessary to preserve the value of AHERF's Chapter 11 estate property at issue therein.

Interim Order, October 25, 1998, R. 1a–6a.

Based upon the foregoing findings, the Bankruptcy Court granted the Committee's emergency motion, enjoined the Commonwealth from taking any action related to or in connection with the Orphans' Court proceedings and the preliminary order of the Orphans' Court except upon further order of the Bankruptcy Court, declared the Orphans' Court's *ex parte* preliminary order null and void, and indicated that it would entertain, on proper notice, requests for relief from the automatic stay. R. 5a–6a. The Commonwealth filed a motion in the Bankruptcy Court to dissolve the October 25, 1998, emergency interim order. R. 30a–33a. A hearing was conducted on November 2, 1998, before the Bankruptcy Court on the Commonwealth's motion to dissolve the "temporary restraining order" of October 25, 1998. R. 182a–234a. At the hearing, the Commonwealth asserted its *parens patriae* powers, "or regulatory authority to preserve the charitable mission of Non-Debtor entities, and to safeguard their charitable endowments, and to protect public health and safety. As such, these actions fall within the police power of exception, police and regulatory power exception to the automatic stay, even though they do have some impact on the assets of this estate." R. 190a. The Commonwealth stated its preliminary investigation and audit showed the likelihood of endowment shortfalls in the endowments of the Non-Debtor Entities. R. 200a. The Commonwealth believed it could offer evidence to establish such endowment shortfalls, and intended to do so in Orphans' Court. R. 199a.

Counsel for Non-Debtor Entities supported the Commonwealth's request for the Bankruptcy Court to dissolve its temporary restraining order or injunction. R. 210a–18a. Hotly contested at this hearing were the following issues: Whether AHERF's sole membership and any other reserved powers or interests it had in the Non-Debtor Entities could be characterized as property of the bankrupt estate under section 541(a) of the Bankruptcy Code, 11 U.S.C. § 541(a); whether the police and regulatory powers of the Commonwealth of Pennsylvania, through its Attorney General, acting in his *parens patriae* capacity, qualified as an exception to the automatic stay under section 362(b)(4);

whether the Orphans' Court proceedings were an attempt to control assets or property of the bankrupt estate; and whether the directors on the boards of the various Non-Debtor Entities and AHERF had an irreconcilable conflict of interest that could only be addressed in the Orphans' Court. At the conclusion of the hearing, the Bankruptcy Court stated it was:

> going to continue this injunction until December 1 with no particular objective in mind except that I assume the parties can get together and file whatever motions or anything they want that would clarify the injunction, modify the injunction, limit the powers in accordance with how you want them limited, whatever you want. And then we will talk about it. . . .

R. 232a. The Bankruptcy Court memorialized that ruling by Order of November 2, 1998, stating, "It is hereby ORDERED, ADJUDGED and DECREED that this Court's order of October 25, 1998, in the form of an injunction on emergency oral motion is continued to and including December 1, 1998." R. 102a.

On November 12, 1998, the Commonwealth filed its notice of appeal from the Bankruptcy Court's November 2, 1998 order, and also filed in that Court an "Emergency Motion Pursuant to F.R.B.P. 8005 for Stay of a November 2, 1998 Order Pending Appeal." R. 103a–113a. Attached to the motion for stay were affidavits of the Presidents and CEOs of Allegheny General Hospital and Allegheny University Medical Centers, each of whom expressed the concern that in the event a trustee were appointed for Debtors, the bylaws of the Non-Debtor Entities would permit the trustee to sell their hospitals to benefit the creditors of the debtors. These affidavits also stated that, because of the uncertainty around the AHERF bankruptcy viz its effect on the assets and operations of the Non-Debtor Entities, the hospitals were currently experiencing injuries to their operations, including the departure of some physicians and staff, the

unwillingness of finance companies to enter into or continue leases, decrease of trade credit, including C.O.D. requirements by major vendors, and decrease in charitable donations. Affidavit of Concetta M. Cibone, President and CEO of Allegheny General Hospital, R. 112a; Affidavit of Barry H. Roth, President and CEO of Allegheny University Medical Centers, R. 113a.

Following non-evidentiary hearing on this motion on November 18, 1998, the Bankruptcy Court took the matter under advisement. After briefing and argument, the Court issued an order on November 30, 1998, denying the motion for stay pending appeal and reaffirming its conclusion that the Orphans' Court litigation violated the automatic stay of section 362. In its opinion in support of this order, the Bankruptcy Court first issued the following precaution:

> The Court would first observe that the issues in question are significant in magnitude, of major public interest and justified concern and, in almost all respects, matters of first impression. Given those characteristics, and the major issues of public policy (as distinguished from relatively commonplace transaction matters such as the sale of assets) this Court, and any other court which might become involved, are all advised to proceed cautiously and thoughtfully to the extent possible, consistent with preserving human life and welfare. There are many conflicting issues here and the decisions made preliminarily will likely control the alternatives that are available going forward.

First Order and Opinion of November 30, 1998, 2, R. 249c.

After chastising the Commonwealth for its stealth tactics in seeking and securing an *ex parte* order from the Orphans' Court without notice to the Committee, and rebuffing some initial procedural and jurisdictional arguments of the Commonwealth, the Bankruptcy Court held:

....whether the AG likes it or not, and whether this Court wants it or not, Congress has imposed upon this Court the obligation and duty to enforce the automatic stay of § 362 with respect to all matters which fit within the definition of assets of the estate as defined at § 541 of the Bankruptcy Code until such time as it is made clear that such subject matter falls outside § 541. This determination is a matter for this Court first, and it should not be decided in the context of a multi-court battle for jurisdiction.

*Id.* at 5, R. 252c. While uncertain whether the particular endowments with which the Attorney General was concerned were assets of the bankrupt estate, or whether Debtors' reserved powers in the Non-Debtor Entities were equitable assets of the state, *id.* at 5–6, nevertheless, the Bankruptcy Court clearly held the uncertainty against the Commonwealth, putting the burden on the Attorney General to prove the Non-Debtor Entities' assets were *not* part of the bankrupt estate in order to avoid the automatic stay. *Id.* at 5–6, R. 252c–253c. The Court also found that the Attorney General's action would interfere with and impact the control of the bankrupt estate assets. *Id.* With virtually no discussion of the Commonwealth's assertion of its *parens patriae* authority or whether such authority might qualify for the police power or regulatory exception to automatic stay set forth in section 362(b)(4), the Bankruptcy Court's order of November 30th nevertheless concluded:

> IN SUMMARY, each of the requests of the AG is in conflict of § 541 and the automatic stay of § 362, subject, however, to a narrower, more defined request of the AG which this Court will hear and consider.

> This Court, therefore, finds that the relief sought by the AG, contrary to its representations to this Court, and apparently to the Court of Common Pleas, is in contravention of the automatic stay

of § 362, particularly when considered in conjunction with the dictate of § 541 and the policy of Congress that even the AG must first request that this Court determine if a particular asset, right, or power is outside the scope of either § 541 or § 362.

> Given the foregoing finding and conclusions, this Court finds it unnecessary to further enjoin the Orphans' Court order of Friday, October 23, 1998, and therefore, this Court's order of October 26, 1998, is vacated, subject to the foregoing findings and conclusions.

*Id.* at 6–7, R. 253c–254c.

Previously, on November 25, 1998, the Committee had filed Plaintiff's Complaint, and, on November 30, 1998, Plaintiff's Motion for Temporary Restraining Order in Bankruptcy Court. R. 351a–370a. Plaintiff's Complaint was filed as an adversary proceeding requesting injunctive relief against the Commonwealth of Pennsylvania and its Attorney General, who had informed the Committee that when and if the Bankruptcy Court's Order of November 2, 1998, expired of its own terms on December 1, 1998, the Commonwealth intended to go back into the Orphans' Court. Accordingly, the Committee filed the adversary complaint requesting the Bankruptcy Court to immediately and indefinitely restrain and enjoin the Commonwealth from pursuing the Orphans' Court litigation throughout the pendency of the Chapter 11 cases. R. 352a. Then on November 30, 1998, the Committee filed the Motion for a Temporary Restraining Order seeking temporary interim relief enjoining the Commonwealth from pursuing its Orphans' Court Litigation pending a hearing and ruling on plaintiff's adversary complaint and motion for preliminary injunctive relief.

The Court conducted a non-evidentiary hearing or argument, also on November 30, 1998, subsequent to the issuance of its order of that same date, at which the parties discussed the effect, if any, of the Committee's adversary complaint and mo-

tion for a temporary restraining order and the need, if any, for clarification of the Court's order of November 30th. The Bankruptcy Court decided to hold the Committee's adversary complaint and motion for temporary restraining order in abeyance pending appeal from the November 2 and 30, 1998, orders. However, the Court issued a second order on November 30, 1998, purportedly in connection with the Commonwealth's emergency motion for a stay pending appeal and the Committee's motion for a temporary restraining order, which stated:

> The injunction set forth in this Court's emergency interim order granting emergency motion of official committee of unsecured creditors enforcing the automatic stay and enjoining actions of the Commonwealth ... issued October 25, 1998, shall be continued indefinitely until further order of this Court. This hearing and order was subsequent to my seven (7) page Order this same date. This order supersedes and voids the last paragraph at page seven (7) of my earlier order of this date.

R. 256c.

On December 10, 1998, the Non-Debtor Entities and the Commonwealth of Pennsylvania each filed separate appeals from the Bankruptcy Court's orders of November 30, 1998. The Commonwealth filed in this Court, on December 2, 1998, its emergency motion to stay the orders of November 2, and 30, 1998, pending appeal pursuant to Rule 8005; the Non-Debtor Entities filed a separate motion to stay the November 30th Orders pending appeal pursuant to Bankruptcy Rule 8005 on December 14, 1998.[3]

After consideration of the respective positions of the parties, the Bankruptcy Court's orders, the transcripts of the vari-

ous hearings (none of which were evidentiary), the assorted pleadings, motions, etc. filed in the Bankruptcy Court, and the record before the Court in these consolidated appeals, the Court will grant the emergency motions to stay the November 2, 1998 and November 30, 1998 orders of the Bankruptcy Court pending disposition of the appeals, which will be expedited.

*Standards and Scope of Review*

■ In reviewing orders of the Bankruptcy Court, its findings of fact are reviewed under a "clearly erroneous" standard, and its conclusions of law are reviewed *de novo*. Bankruptcy Rule 8013; *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1203 (3d Cir. 1991) (interpretation and application of legal precepts underlying automatic stay proviso, section 362, subject to plenary review); *Family Kingdom, Inc. v. EMIF New Jersey Ltd. Partnership*, 225 B.R. 65, 69 (D.N.J.1998) (standards of review of order of the Bankruptcy Court denying motion for stay pending appeal pursuant to Bankruptcy Rule 8005). Findings of fact are clearly erroneous when, after reviewing the record evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed; however, it is not for the district court, acting as an appeals court in reviewing an order of the Bankruptcy Court, to make its own findings of fact. *Sacred Heart Hospital of Norristown v. Commonwealth of Pennsylvania, Dep't of Public Welfare*, 133 F.3d 237, 241 (3d Cir. 1998).

*Bankruptcy Rule 8005*

■ A motion for stay pending appeal of an order of a bankruptcy court "must ordinarily be presented to the bankruptcy judge in the first instance." Bankruptcy

---

**3.** Because the Non-Debtor Entities' notice of appeal was not docketed in the district court until January 6, 1999, at Civil Action No. 99–012, their motion for a stay pending appeal was inadvertently docketed at the Commonwealth's appeal in Civil Action No. 98–1993.

These two appeals have now been consolidated at No. 98–1993, along with the Commonwealth's second appeal from the orders of November 30, 1998, at Civil Action No. 99–04.

Rule 8005.[4] "Although the rule states that a motion for relief pending appeal ordinarily must be made in the first instance in the bankruptcy court, Rule 8005 allows for such a motion to be made to the district court upon a showing of why the relief was not obtained from the bankruptcy court." *In re Highway Truck Drivers & Helpers Local Union No. 107*, 888 F.2d 293, 298 n. 6 (3d Cir.1989). *See also In re Blackwell*, 162 B.R. 117, 119 (E.D.Pa.1993) ("Only then may a party move for a stay in the district court, provided that 'the motion [shows] why the relief ... was not obtained from the bankruptcy judge.'"). Bankruptcy Rule 8005 explicitly contemplates, therefore, "non-ordinary" occasions when it may be appropriate for the district court to review and resolve a motion for stay pending appeal in the first instance. The application for stay pending appeal filed on behalf of the Non-Debtor Entities presents such an occasion, inasmuch as the Bankruptcy Court had previously heard argument on and rejected the Commonwealth's motion for stay of its orders enjoining the Orphans' Court proceedings, and reaffirmed that ruling on at least one other occasion. The reason why the Non-Debtor Entities did not pursue this avenue of relief before the Bankruptcy Court is apparent, and this Court will therefore address their motion for stay pending appeal pursuant to Bankruptcy Rule 8005, despite the objections of the Committee that this motion for stay should be denied for failure to present it to the Bankruptcy Court in the first instance.

 In order to obtain a stay pending appeal under Bankruptcy Rule 8005, a movant must establish the elements necessary to obtain a preliminary injunction: (1) a strong likelihood of success on the merits of the appeal; (2) the movant will suffer substantial irreparable injury if the stay is denied; (3) substantial harm will not be suffered by other parties if the stay is granted; and (4) issuance of the stay would not harm the public interest. *Family Kingdom*, 225 B.R. at 69; *In re Blackwell*, 162 B.R. at 119; *In re Sharon Steel Corp.*, 159 B.R. 730, 733 (Bankr.W.D.Pa. 1993). While some courts have found that the movant's failure to persuade the court regarding any one of these factors is sufficient to deny the stay, *e.g. In re Blackwell*, 162 B.R. at 118, "the more common approach ... is to balance all factors in making this determination. *E.g., In re Dakota Rail, Inc.*, 111 B.R. 818 (Bankr. D.Minn.1990); *In re Richardson*, 15 B.R. 930, 931 (Bankr.E.D.Pa.1981)." *In re Edwards*, 228 B.R. 573, 574–76 (Bankr. E.D.Pa.1999). Stated otherwise, a court "should realize that these four factors structure the inquiry. However, no one aspect will necessarily determine its outcome. Rather, proper judgment entails a 'delicate balancing of all elements.'" *In re Roth American, Inc.*, 90 B.R. 94, 95 (Bankr.M.D.Pa.1988) (citations omitted). The Commonwealth and the Non-Debtor Entities have met their burden of demonstrating that a discretionary stay is warranted under Bankruptcy Rule 8005. Before commencing the Rule 8005 analysis, it is important to understand what is before the Court.

The threshold issue in this consolidated appeal—the issue by which this Court must gauge the likelihood of success on its merits—is this: By what authority may the Bankruptcy Court enjoin proceedings before a state court of competent jurisdiction in matters arguably affecting debtors in bankruptcy or their property and assets that may be included in the bankrupt estate; or, more specifically, whether the

4. Bankruptcy Rule 8005 provides:
 A motion for a stay of the judgment, order or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must *ordinarily* be presented to the bankruptcy judge in the first instance. . . . A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, *may be made to the district court* or the bankruptcy appellate panel, *but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge.*

Orphans' Court proceedings are subject to the automatic stay of section 362(a) or are exempt from stay pursuant to section 362(b)(4). There is a strong likelihood movants will prevail on their contention that the Orphans' Court proceedings are not subject to the automatic stay, and that the Bankruptcy Court erred in refusing to recognize the police powers exception.

All of the parties and *amici curiae* have extensively briefed the *underlying* issue of the nature and extent of AHERF's interest, as sole member of the Non-Debtor Entities, under Pennsylvania law, and whether that interest qualifies as AHERF's legal or equitable property for purposes of inclusion within the bankrupt estate under section 541(a), 11 U.S.C. § 541(a). Most of the parties and *amici curiae* press this Court for resolution of what all agree is a complicated issue of first impression involving an unsettled interpretation of state law, including its Non-Profit Corporation Law under which these various entities have been created. Given the procedural posture of the case, and the lack of testimony that might be relevant and necessary to knowingly and intelligently resolve that ultimate issue in an informed fashion, this Court considers it premature and unwise to attempt to navigate those uncharted waters.

In fact, of the three main contenders for the job of cartographer, this Court, sitting as a court of review, is the *last* one that ought to attempt this task. Instead, this Court must determine at the threshold whether the Bankruptcy Court has the authority to oust the Orphans' Court of its jurisdiction to resolve these unsettled, complex and important questions of state law. Because this Court finds the Bankruptcy Court has no authority to do so under the auspices of section 362(a), it is neither necessary nor appropriate to resolve the ultimate underlying issue.

■■■■ The scope of a debtor's estate is defined by 11 U.S.C. § 541, which limits the estate to property held by the debtor at the time the bankruptcy petition is filed, but "in enacting section 541, Congress understood that, in large measure, nonbankruptcy law would define the debtor's property interest and thereby determine the contents of the debtor's estate. *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir.1986)." *Stephen Smith Home For the Aged, Inc. v. Mercy Douglass Center, Inc.*, 80 B.R. 678, 682 (E.D.Pa. 1987). The nature and extent of AHERF's interest in the Non-Debtor Entities' assets and corporate structure is, of course, a matter that will ultimately have to be resolved with reference to state law which creates and defines property interests. *See, e.g. Krystal Cadillac Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 142 F.3d 631, 635 (3d Cir.1998); *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 37 (3d Cir.1993).

Without conducting evidentiary hearings or legal analysis of the governing state laws, including the Pennsylvania Non-Profit Corporation Law, the Bankruptcy Court concluded (or assumed) in its order of October 25, 1998, that the Orphans' Court proceedings involve "among other things, AHERF's equity or other interests in the Nondebtor Respondents, *which interests are part of AHERF's chapter 11 estate* under section 541(a) of the Bankruptcy Code. This Court has *exclusive* jurisdiction over such property under section 1334(e) of title 28, United States Code." Emergency Interim Order, October 25, 1998, R. 3a (emphasis added). The Bankruptcy Court never waivered in its assumption throughout the course of events leading to these appeals. This Court would be hard-pressed to review this conclusion in the absence of specific findings made after evidentiary hearing and interpretation and analysis of the applicable state law, and, if the section 541 "property" issue were necessary to resolve the appeals before the Court, would probably have to remand for further proceedings and specific findings. *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 268 n. 9 (3d Cir.1991) (remand for specific

findings regarding stay in order, *inter alia,* to permit appellate court to properly analyze bankruptcy court's decision in event further review is sought).

However, it is not necessary to resolve that ultimate issue in order to resolve the precise issue before the Court. Therefore, for the purpose of deciding whether to issue a stay pending appeal pursuant to Bankruptcy Rule 8005 only, this Court assumes arguendo, without deciding, that AHERF's interest in the Non-Debtor Entities is property of the bankruptcy estate and that the Orphans' Court proceedings are an attempt to exert control of such property.

*Elements for Obtaining Bankruptcy Rule 8005 Stay Pending Appeal*

(1) *Likelihood of Success on the Merits of the Appeal*

(a) *Automatic Stay and Exceptions*

Section 362(a) provides, in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of-

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .

11 U.S.C. § 362(a).

Section 362(b) sets forth a number of statutory exceptions to the automatic stay, and, prior to October 21, 1998, provided the following as the so-called "police powers" exception:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay-

\* \* \*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power

11 U.S.C. § 362(b)(4) and (5) (repealed and replaced).

The massive and multi-faceted Omnibus Consolidated and Emergency Supplemental Appropriations Act of October 21, 1998, PL 105–277, 112 Stat. 2681, modified the police power exception to the automatic stay in bankruptcy proceedings by combining former subsections (b)(4) and (b)(5) into one subsection, (b)(4), and, *inter alia,* broadening the reach of the exception to include the automatic stay of acts designed to "obtain possession of property of the estate or of property from the estate or to exercise *control over property of the estate."* 11 U.S.C. § 362(a)(3). Subsection (b)(4) now provides that the filing of a bankruptcy petition does not operate as a stay:

(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an ac-

tion or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

11 U.S.C. § 362(b)(4).

The Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1998 did not specify an effective date for the amendments to the Bankruptcy Code's police and regulatory powers exception to the automatic stay, but one noted authority has concluded that "the Act, including the amendment to section 362(b) should be effective immediately. Because the scope of the automatic stay and its exceptions affects primarily the burden of obtaining a stay or relief from the stay, the amendment should apply to pending cases, including any proceeding that has not been resolved by a final order." Collier on Bankruptcy, Ch. 362, § 362.05[5] (King, 15th ed. Rev.). The Court agrees.

■■■ In *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court outlined the proper procedure for determining whether a statute reaches situations predating its effective date by explaining:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

■■■ *Landgraf* made it clear, however, that statutes which modify or alter jurisdiction of courts usually do not take away substantive rights but "simply change[ ] the tribunal that is to hear the case," and that changes in procedural rules are usually applicable to suits arising before their enactment without posing any problem of retroactivity. *Id.* at 274–75, 114 S.Ct. 1483 (citations omitted). The October 21, 1998, amendment to section 362(b)(4) does not alter substantive rights but merely alters somewhat the reach of the police powers exception to the automatic stay, which adjusts the distribution of jurisdiction or the legislative choice of tribunal, and so should be applied to pending cases.[5] *See, e.g., Mathews v. Kidder,*

5. A substantial change made by the amendments expanded the reach of the police powers exception to actions taken to exercise control over property of the debtor, which would be automatically stayed by section 362(a)(3) in the absence of an exception. Some courts have held that, by its plain language, former section 362(b)(4) did not apply to such section 362(a)(3) stays. *See, e.g. Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 590–91 (9th Cir.1993). The Bankruptcy Court relied on *Hillis* in ruling that the police powers exception was inoperative in this case to override the stay of the Orphans' Court proceedings, which the parties seem to agree may be seen as an action that could result in some control being exercised over debtors' property. However, a compelling argument can and has been made that, despite the "plain language" of former section 362(b)(4), it is equally applicable to actions subject to the automatic stay of section 362(a)(3). *See, e.g. Yellow Cab Cooperative Ass'n v. Metro Taxi, Inc.*, 132 F.3d 591, 597–99 (10th Cir. 1997) (rejecting *Hillis* analysis, and collecting cases supporting view that former subsection

*Peabody & Co., Inc.,* 161 F.3d 156, 161 (3d Cir.1998) (refusing to apply Private Securities Litigation Reform Act to conduct occurring before its passage on the grounds it altered substantive rights, as distinguished from statutes properly given retroactive effect which "affect only prospective relief, or change procedural rules, or *simply allocate jurisdiction among fora.*"); *Wilson v. Yaklich,* 148 F.3d 596, 602–03 (6th Cir.1998) ("three strikes" provision of Prison Litigation Reform Act would be applied to "strikes" preceding its passage because it only affected procedural rules), *citing, inter alia, Keener v. Pennsylvania Board of Probation & Parole,* 128 F.3d 143, 144–45 (3d Cir.1997) (same); *Salazar–Haro v. INS,* 95 F.3d 309, 310–11 (3d Cir.1996) (Antiterrorism and Effective Death Penalty Act applied to prevent judicial review of INS deportation determinations made in cases pending when legislation took effect; "withdrawal of jurisdiction, although realistically disrupting settled expectations, does not preserve pending litigation.").

■ Thus, if the police powers exception is otherwise applicable, the 1998 amendments make clear it operates with regard to the Orphans' Court litigation against Debtor AHERF and the Non-Debtor Entities, even though that litigation might be deemed an action to exercise control over property of the debtor estate under section 362(a)(3), as well as an action against the debtor, section 362(a)(1).

### (b) *Police or Regulatory Powers Exception*

In the Court of Appeals for the Third Circuit, even prior to the 1998 amendments, the police powers exception has been broadly interpreted and liberally applied. A convenient starting point is *Penn Terra Ltd. v. Dep't of Environmental Resources, Commonwealth of Pennsylvania,*

(b)(4) police powers exception was applicable to section 362(a)(3) stays of actions seeking to control property of the debtor); *Javens v. City*

733 F.2d 267 (3d Cir.1984) which held that an injunction secured by the Commonwealth to enforce a consent decree to remediate damage caused by violations of state antipollution laws was exempt from automatic stay under section 362(b)(4.) Although it arose in the context of the state's authority to protect its citizens from environmental risks, *Penn Terra* clearly envisioned a broad role for the police powers exception generally. The Court stated, in most relevant portion:

Subsections 362(b)(4) & (5), however, return to the States with one hand some of what was taken away by the other [hand, with subsection 362(a)]. The purpose of this exception is also explained in the legislative history of the Code:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a government unit is suing a debtor to prevent or stop violation of fraud, environmental protection, *consumer protection,* safety, or *similar police or regulatory laws,* or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay.

S.Rep. No. 95–989 at 52, 1978 U.S.Code Cong. & Admin.News at 5787, 5838; H.Rep. No. 95–595 at 343, 1978 U.S.Code Cong. & Admin.News at 6299 (emphasis added).

\* \* \*

### B. General Principles of Construction

*At its core, interpretation of section 362 involves questions of federal supremacy and pre-emption.* It is undisputable that the Commonwealth is normally empowered to regulate the environment, *in its role as protector of the public health and welfare,* and thus may rightfully compel adherence to environmental standards. Penn Terra

*of Hazel Park,* 107 F.3d 359 (6th Cir.1997) (same).

claims, however, that in this instance, the federal government has pre-empted that power through the Bankruptcy Code.

While Congress, under its Bankruptcy power, certainly has the constitutional prerogative to pre-empt the States, even in their exercise of police power, the usual rule is that congressional intent to pre-empt will not be inferred lightly. Pre-emption must either be explicit, or compelled due to an unavoidable conflict between the state law and the federal law.... Consideration of whether a state provision violates the supremacy clause starts with the basic assumption that Congress did not intend to displace state law.....

\* \* \*

Given the general rule that pre-emption is not favored, and the fact that, in restoring power to the States, Congress intentionally used such a broad term as "police and regulatory powers," we find that *the exception to the automatic stay provision contained in subsections 362(b)(4)–(5) should itself be construed broadly, and no unnatural efforts be made to limit its scope. The police power of the several States embodies the main bulwark of protection by which they carry out their responsibilities to the People; its abrogation is therefore a serious matter. Congress should not be assumed, therefore, to have been miserly in its refund of that power to the States.* Where important state law or general equitable principles protect some public interest, they should not be overridden by federal legislation unless they are inconsistent with explicit congressional intent such that the supremacy clause mandates their supersession. For the same policy reasons, *the "exception to the exception"* created by subsection 362(b)(5), rendering "enforcement of a money judgment" by a government unit susceptible to the automatic stay, *should be construed narrowly so as to leave to*

*the States as much of their police power as a fair reading of the statute allows.* 733 F.2d at 272–73 (citations omitted; emphasis added).

In order to invoke the police powers exemption, the purpose of the state's action must be the conservation or protection of the public health, welfare or safety. *Nejberger v. Pennsylvania Liquor Control Board,* 112 B.R. 714, 722 (Bankr. E.D.Pa.1990), *citing United States v. Nicolet, Inc.,* 857 F.2d 202, 208 (3d Cir.1988). For purposes of the Bankruptcy Rule 8005 "likelihood of success on the merits" analysis, it will suffice to observe that the Court of Appeals for the Third Circuit interprets the police powers exception broadly, "*so as to leave to the States as much of their police power as a fair reading of the statute allows,*" and that former sections 362(b)(4) and (5) have been recognized and effective in a wide variety of contexts involving a broad assortment of governmental agencies and powers. *See, e.g. Alpern v. Lieb,* 11 F.3d 689 (7th Cir.1993) (appeal from imposition of Rule 11 sanctions was exempt from automatic stay pursuant to section 362(b)(4)); *NLRB v. 15th Avenue Iron Works, Inc.,* 964 F.2d 1336 (2d Cir. 1992) (NLRB unfair labor practice proceedings and enforcement proceedings are police or regulatory powers actions by a governmental unit, and therefore are exempt from automatic stay of section 362(b)(4)); *James v. Draper,* 940 F.2d 46 (3d Cir.1991) (state civil forfeiture proceedings; rejecting Maryland Bankruptcy Court's narrow view of the scope of the police powers exception, finding section 362(b)(4) clearly applicable to state civil forfeiture proceedings, and cautioning bankruptcy courts not to delve into the merits of the state court action to determine the scope of the police powers exception, in light of the "profound limitation" on the authority of federal courts to address the merits of state court proceedings and judgments); *Brock v. Morysville Body Works, Inc.,* 829 F.2d 383 (3d Cir.1987) (OSHA citation enforceable against debtor

notwithstanding automatic stay, pursuant to police powers exception of section 362(b)(4)); *EEOC v. Rath Packing Co.,* 787 F.2d 318 (8th Cir.), *cert. denied,* 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986) (automatic stay provision did not bar EEOC from maintaining suit for the entry of a money judgment for backpay in a Title VII action, pursuant to police powers exception of section 362(b)(4)); *State of Ohio v. Mansfield Tire and Rubber Co.,* 660 F.2d 1108 (6th Cir.1981) (adjudication of workmen's compensation claims by state's Industrial Commission exempt from automatic stay pursuant to section 362(b)(4)). *See generally Collier on Bankruptcy,* Chapter 363, § 362.05[5][b].

(c) *Pecuniary Purpose/ Public Policy Test*

▇▇▇▇▇ There are two commonly-accepted tests for determining whether the government's actions qualify for the police powers exception: the "pecuniary purpose" test and the "public policy" test. As the Court of Appeals for the Ninth Circuit has explained these tests:

> There are two tests for determining whether agency actions fit within the section 362(b)(4) exception: (1) the "pecuniary purpose" test and (2) the "public policy" test. *NLRB v. Continental Hagen Corp.,* 932 F.2d 828, 833 (9th Cir. 1991). Under the pecuniary purpose test, the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare. *Id.* If the government action is pursued solely to advance a pecuniary interest of the governmental unit, the stay will be imposed. *Thomassen v. Division of Med. Quality Assurance (In re Thomassen),* 15 B.R. 907, 909 (9th Cir. BAP 1981).

> The public policy test "distinguishes between government actions that effectuate public policy and those that adjudi-

cate private rights." *Continental Hagen,* 932 F.2d at 833 (*quoting NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 942 (6th Cir.1986)).

*Universal Life Church, Inc. v. United States,* 128 F.3d 1294, 1297 (9th Cir.1997). *See also Nicolet,* 857 F.2d at 209 (endorsing and applying the pecuniary interest/public policy analysis of *Edward Cooper Painting*).

(d) *Are Parens Patriae Powers Embraced by Police Powers Exception?*

▇▇▇▇▇ In *Illinois v. Electrical Utilities,* 41 B.R. 874, 876 (N.D.Ill.1984), the district court observed, in a case where Illinois asserted the police power exception to the automatic stay to allow it to pursue state actions for remedy of environmental violations, that the "state acts as *parens patriae.* The *parens patriae* power is the power to intervene on behalf of another party who cannot protect his or her own rights.... The police power is the power to protect society in general from a harm. *Rennie v. Klein,* 720 F.2d 266, 273 (3d Cir.1983) (Judge Seitz concurring). 'The two [powers] often overlap.' *Rennie v. Klein,* 653 F.2d 836, 845 (3d Cir.1981), *vac'd and remanded on other grounds,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982) .... The court finds nothing in the legislative history to distinguish a suit involving only a state's police power from one involving both its *parens patriae* power and its police power." (parallel and other citations omitted). While this Court has not discovered a reported decision regarding relief from an automatic stay in bankruptcy for proceedings wherein the state is exercising its *parens patriae* powers to protect the assets and/or charitable mission of a charitable trust or other nonprofit charitable corporation, the Court does not hesitate to find that the police powers exception of section 362(b)(4) embraces these traditional parental powers of the Commonwealth of Pennsylvania, powers of ancient origin[6] and recent usage[7]

---

**6.** In *Fontain v. Ravenel,* 58 U.S. 369, 17 How.

369, 15 L.Ed. 80 (1854), the Supreme Court

which the executive exercises in conjunction with the supervisory authority of the Orphans' Courts. The Orphans' Court proceedings initiated by the Attorney General are not about advancing any pecuniary interest of the Commonwealth as a creditor, or that of any citizen-beneficiaries of the charitable corporations' charitable missions, but rather, are about its role as the sole champion of the public health, safety and welfare in matters affecting charitable trusts and foundations for which the public is an intended beneficiary. The Commonwealth's actions relate primarily to protection of the public health and welfare and not to advance a private, pecuniary interest, and are to effectuate the public interest, not to adjudicate private rights, as is evident from examination of the *parens patriae* powers in this context.

In *Stephen Smith Home for the Aged, Inc. v. Mercy Douglass Center, Inc.*, 80 B.R. 678 (E.D.Pa.1987), the debtor, the Stephen Smith Home for the Aged, brought an adversary proceeding in Bankruptcy Court against certain banks which were trustees of charitable trusts and the entity to which debtor had sold certain assets, seeking a determination that the

Chapter 11 debtor was the rightful beneficiary of various charitable bequests and accounting. The ultimate issue was, "at bottom," "what property interests does the debtor possess which can be distributed to its creditors" under 11 U.S.C. § 541. *Id.* at 682. The Attorney General of Pennsylvania was named a party in the adversary proceeding.

The District Court adopted the report and accepted the recommendation of the Bankruptcy Court that the federal district and bankruptcy courts should abstain from resolving the unsettled questions of state law presented therein under the discretionary abstention provision of 11 U.S.C. § 1334(c)(1) because "resolution of this matter would require interpretation of unsettled state probate law and would divest the Orphans' Court Division of the Court of Common Pleas from exercising its statutorily granted discretion." The Bankruptcy Court fully explained the *parens patriae* power of the Commonwealth of Pennsylvania, as follows:

The extensive oversight by the Commonwealth of Pennsylvania in charitable trusts within its jurisdiction is a matter

of the United States explained the English sovereign's *parens patriae* power became reposited in Pennsylvania's executive, in conjunction with the close supervision by courts of chancery. "The State, as a sovereign, is the *parens patriae* .... The courts of the United States cannot exercise any equity powers, except those conferred by acts of congress, and those judicial powers which the high court of chancery in England, acting under its judicial capacity as a court of equity, possessed and exercised, at the time of the formation of the constitution of the United States. Powers not judicial, exercised by the chancellor merely as the representative of the sovereign, and by virtue of the king's prerogative as *parens patriae*, are not possessed by the circuit courts.... It is a principle in England, that the king, as *parens patriae*, enforces public charities, where no other person is intrusted with the right. Where there is no trustee, the *king, by his lord chancellor, administers the trust, as the keeper of the king's conscience; ....*" 58 U.S. at 384–85. *See also Vidal v. Girard's Executor's*, 43 U.S. 127, 167–68, 2 How. 127, 11 L.Ed. 205 (1844)

(describing the *parens patriae* power of Pennsylvania as a "paternal power .. existing somewhere to take care of the sick, the widow, and the orphan. Take this away and we become a nation of savages. If there is no protection for the infant and the aged, the charm of civilization is lost. In Pennsylvania all this is cared for; by hospitals and houses of refuge.... All that is asked of government is, that under the protection of law, the great duty of charity may be fulfilled; ....").

7. *E.g., In re Barnes Foundation*, 453 Pa.Super. 436, 684 A.2d 123 (1996) (Attorney General represents interest of the public in charitable foundations, and not individual intended beneficiaries, to ensure the endowments would remain dedicated to their charitable mission); *In re Estate of Feinstein*, 364 Pa.Super. 221, 527 A.2d 1034, 1036 n. 3 (1987) ("Attorney General represents a broader interest than that of the charity alone. He must protect the interests of the public at large 'to whom the social and economic benefits of [charitable] trusts accrue.' ") *In re Pruner's Estate*, 390 Pa. 529, 531, 136 A.2d 107, 109 (1957).

of longstanding. As Justice Roberts observed in *Coleman Estate* [317 A.2d 631 (1974)]:

> A charitable trust is initially and continuously subject to the *parens patriae* power of the Commonwealth and the supervisory jurisdiction of its court.

456 Pa. at 168, 317 A.2d at 634.

The beneficiary of charitable trusts is the general public to whom the social and economic advantages of the trust accrue. But because the public is the object of the settlor's benefactions, private parties have insufficient financial interest in charitable trusts to oversee their enforcement. Consequently, the Commonwealth itself must perform the function if charitable trusts are to be properly supervised.

*Pruner Estate,* 390 Pa. 529, 136 A.2d 107, 109 (1957) (footnotes omitted); ...

State oversight of charitable trusts is accomplished by delegating to the state Attorney General the *parens patriae* powers of the Commonwealth. *See Coleman Estate,* 317 A.2d at 634; ... Thus, the Attorney General is a party in interest in all disputes concerning charitable trusts and he must receive proper notice of the proceedings.... In addition to delegating this authority to the Attorney General, the state has also determined that the Orphans' Court Division of the Court of Common Pleas 'with its control and direction of trustees in the use and disposition of property belonging to corporate charities, exercises broad visitorial and supervisory power of the Commonwealth, and its jurisdiction is exclusive.' *Craig Estate,* 356 Pa. 564, 52 A.2d 650, 652 (1947); *Coleman Estate,* 317 A.2d at 634 ("the Orphans' court has plenary power to ensure the competency and performance of trustees")....

Not only does Orphans' Court supervise charitable trustees, resolve disputes concerning the trusts, which also involve the Attorney General, and help determine the settlor's intent in establishing those trusts, but this state court also exercises "cy pres" power. The doctrine of cy pres is involved only 'in the event that the charitable purposes of the conveyor are frustrated or incapable of fulfillment.' ... 'The application of the doctrine ... should effectuate the intent of the testator as nearly as humanly possible.'...

* * *

Thus, current state law vests discretion in Orphans' Court to decide who should be beneficiary of various charitable trusts after the debtors' prepetition sale of assets. That court may decide that the settlors' interest would be served by permitting the debtor, Mercy-Douglass, or some other charitable institution to become beneficiary.... The Orphans' Court, in theory, also has the authority to dissolve the trust completely if it believes its funds are now inadequate to serve the intended charitable purpose....

*Stephen Smith Home for the Aged,* 80 B.R. at 684 (parallel and other citations omitted; footnotes omitted).

Given the symbiotic relationship between the Attorney General and the Orphans' Court in matters within their authority and jurisdiction pertaining to the oversight of charitable trusts and foundations, the Bankruptcy Court recommended it and district court abstain from deciding the ultimate issue of whether certain charitable bequests were in the bankrupt's estate under section 541 in deference to the Orphans' Court's expertise and prosecution of appropriate proceedings in that Court by the Attorney General. The Bankruptcy Court reviewed the common law and Bankruptcy Code provisions regarding abstention, and concluded that all signs pointed to the exercise of discretionary abstention, stating in part:

> Allowing state courts to first decide unsettled cases of state law is but one aspect of comity and federalism. Anoth-

er is the recognition of important state interests in the outcome of various disputes.... Both aspects of comity are implicated by the matter at bench.

The debtor presents this dispute as a matter of contract interpretation, while movants believe the primary issue is one of interpretation of certain will provisions. However, I agree with the position of Mellon Bank that statutory construction of the Nonprofit Corporation Law of 1972, 15 Pa.C.S.A. § 7301 et seq., should be resolved before examining either the contract or the will terms. * * *

In order for this bankruptcy court to resolve this adversary proceeding, I would be forced to construe a statute never interpreted before and to exercise discretion statutorily afforded the Orphans' Court, which has expertise in the matter and whose discretion must be exercised for the benefit of the citizens of the Commonwealth. Thus, this dispute falls squarely within the parameters of § 1334(c)(1) and discretionary abstention is appropriate.... *Accord, e.g., Harley Hotels, Inc. v. Rain's International, Ltd.*, 57 B.R. 773 (M.D.Pa. 1985) (unsettled issues of state law which affect state policy provide grounds to abstain); *Matter of Bob Lee Beauty Supply Co.*, 56 B.R. 17 (Bankr.M.D.Ala. 1985) (probate matter should be decided by state court); *In re Eastern Consolidated Utilities, Inc.*, 17 B.R. 809 (Bankr. E.D.Pa.1982) (bankruptcy court should defer to specialized state forum due to its expertise); *In re Remington*, 14 B.R. 496, 504 (Bankr.D.N.J.1981) (state court should interpret certain will provisions).

80 B.R. at 683, 685 (parallel and other citations omitted).

### (e) *Conclusion*

In light of the foregoing discussion, the police powers exception of section 362(b)(4), as amended, clearly is applicable in this case and exempts the Commonwealth from section 362(a)'s automatic stay

of the Orphans' Court litigation. Accordingly, it is likely to prevail on the merits of the issue before this Court in these consolidated appeals.

The Court expresses no view on the merits of the substantive issues the Commonwealth and Non-Debtor Entities may raise in the Orphans' Court or their likelihood of success in that Court, nor would it be appropriate for this Court or the Bankruptcy Court to do so. *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 40, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (bankruptcy courts may not scrutinize the validity of every administrative or enforcement proceeding brought against a bankrupt entity; such a reading of section 362(b)(4) "is inconsistent with the *limited authority* Congress has vested in bankruptcy courts."). *Perhaps* the relief sought in the Orphans' Court proceedings will prove to be beyond the Commonwealth's reach, but that is within the specialized expertise of that Court to decide in the first instance.

### 2. *Irreparable Injury to Movants If Stay is Denied*

The opponents of the motion for stay pending appeal argue that the Commonwealth will suffer no injury if the stay is denied because the Bankruptcy Court, and now the trustee who was appointed in December 1998, are ready, willing and quite capable of protecting the interests of the Commonwealth and the public in the bankruptcy proceedings, thus preventing the dire consequences the Commonwealth fears. This objection misses the point.

The harm that the Commonwealth would suffer if the stay is not granted is substantial and is irreparable, because it is the deprivation of the right to participate in the symbiotic relationship with the Orphans' Court, the specialized court which traditionally operates to protect the public's interests in charitable foundations and trusts, as prosecuted by the Attorney General through his *parens patriae* power, and

to obtain a ruling by the court charged with the responsibility and with the expertise to resolve the unsettled questions of state property and nonprofit corporation/ charity law.

### 3. *Harm to Opponents If Stay is Granted*

 The parties may be inconvenienced by having to appear in two forums. However, such inconvenience cannot be a basis for finding substantial harm to opponents if a stay is not granted, because Congress' exceptions to the automatic stay of section 362(a) explicitly acknowledge there will be instances where parties in a bankruptcy proceeding may simultaneously or concurrently have to appear and litigate proceedings in another forum. Just as the opponents argue the Attorney General may protect the interests of the public by participation in the bankruptcy proceedings, the converse is also true. Moreover, it may be appropriate for the Bankruptcy Court to abstain from litigating issues which are before the Orphan's Court, *Stephen Smith Home,* in which case these issues would not be simultaneously litigated in two courts.

### 4. *Public Interest*

Obviously there is great public interest in having AHERF's and its debtor affiliates' Chapter 11 bankruptcy proceedings continue to an orderly, efficient resolution to maximize and preserve the estate's assets for the sake of the creditors. On the other hand, the non-profit charitable corporations involved in this case have incorporated under Pennsylvania's Non-Profit Corporation Law and submitted themselves, therefore, to the authority of Pennsylvania's Attorney General, in its *parens patriae* capacity, and to the jurisdiction of the Orphans' Court, as overseer of charitable trusts and foundations. The federal courts must give the Attorney General some deference in this regard as it presumptively acts in the public interest, and is, indeed, the only party that can really represent the "beneficiaries" of the charitable missions of these entities, that is, the public. Moreover, the public interest may be served by abstaining from deciding the ultimate property of the estate issue, 11 U.S.C. § 541, while awaiting an expeditious resolution of the complicated issues of state law in matters of first impression by the specialized state court with the expertise to make such decisions.

 Additionally, the choice of forum issue may be revisited at a later time, by the Bankruptcy Court or by this Court, if the public interests are shown to be *disserved* by dual proceedings or if the proceedings in the Orphans' Court were to be unreasonably delayed for some reason. The Court notes that the Bankruptcy Court has the *authority* to issue injunctions pursuant to section 105(a), 11 U.S.C. § 105, to enjoin proceedings that are not automatically stayed by section 362(a). *See, e.g. Wedgewood Invest. Fund, Ltd. v. Wedgewood Realty Group, Ltd.,* 878 F.2d 693, 700–01 (3d Cir.1989) (where automatic stay had been inadvertently terminated by bankruptcy court, bankruptcy court could consider injunction under section 105); *Brennan v. Poritz,* 198 B.R. 445, 449–50 (D.N.J.1996), *citing Penn Terra,* 733 F.2d at 273; *In re Phar–Mor, Inc. Securities Lit.,* 164 B.R. 903, 906–07 (W.D.Pa.1994) (where action did not qualify as an action to control property of debtor's estate, court could *consider* injunction pursuant to authority of section 105(a), 11 U.S.C. § 105(a)). However, in that event, it would be the party moving for an injunction that would bear the burden of proving the four elements necessary for injunctive relief, *Wedgewood Invest. Fund,* 878 F.2d at 700, an extraordinary remedy that will only be granted in limited circumstances. *Brennan,* 198 B.R. at 452 (citations omitted).

Some courts have taken the position that even more caution than usual should be exercised when entertaining the prospect of enjoining a proceeding which Congress has exempted from operation of section

362(a)'s automatic stay. *E.g., Brennan,* 198 B.R. at 453 ("examination of the cases where courts have enjoined state police power or regulatory actions under § 105 makes clear that injunctions of state regulatory actions are a rare remedy, appropriate only in exigent circumstances where the state regulatory action seriously threatens the bankruptcy process."). This Court expresses no view on the likelihood of success of a complaint to enjoin the Orphans' Court proceedings, but notes that the existence of a viable exception to the automatic stay should at least *inform* the Bankruptcy Court's decision of whether to enjoin a proceeding subject to an exception recognized by section 362(b), as Congress has conducted its balance of interests with regard to exempt proceedings. Also informing the Bankruptcy Court's decision must be its own sage advice to "any other court which might become involved .... to proceed cautiously and thoughtfully to the extent possible, consistent with preserving human life and welfare." First Order and Opinion of November 30, 1998, 2, R. 249c.

■ For all of the foregoing reasons, this Court finds that movants have demonstrated the elements necessary to require a stay pending appeal. Accordingly, the Court will grant the motions for stay pending appeal pursuant to Bankruptcy Rule 8005, and will enter an order staying the orders of the Bankruptcy Court of November 2, 1998, and November 30, 1998, pending final disposition of these consolidated appeals by this Court.